UNITED STATES of America,

v.

REX TRAILER COMPANY, Inc.

No. 11139.

United States Court of Appeals, Seventh Circuit.

Jan. 18, 1955.

Michael L. Fansler, Bernard Stroyman, Indianapolis, Ind., Fansler, Fauvre, Dongus & Chambers, Indianapolis, Ind., of counsel, for appellant.

Jack C. Brown, U. S. Atty., Indianapolis, Ind., Melvin Richter, Atty., U. S. Dept. of Justice, Washington, D. C., Warren E. Burger, Asst. Atty. Gen., for appellee.

Before DUFFY, Chief Judge, and MAJOR and FINNEGAN, Circuit Judges.

DUFFY, Chief Judge.

This action was brought by the United States government pursuant to § 26(b) of the Surplus Property Act.[1] The complaint contained five counts. Count 1 was as follows:

"That the defendant during the week of June 17, 1947, a more exact date being at this time unknown, at Tinker Field, near Oklahoma City, in the Western District of the state of Oklahoma, did cause Lester Daniels to make a false statement of a material fact in writing to the War Assets Administration, an agency of the United States Government, for

---

1. § 26(b) (1) of the Surplus Property Act of 1944, 50 U.S.C.A.Appendix, § 1635(b), repealed and re-enacted as § 209(b) of the Federal Property and Administrative Services Act of 1949, 40 U.S.C.A. § 489(b).

the purpose of obtaining 1 Ross Carrier Company Straddle Truck, model 90–7056, serial 1940 USA 563821."

Counts 2 to 5 inclusive are identical with Count 1 except as to the name of the person making the false statement and the description of the motor vehicle involved. Judgment was asked in the sum of $2,000 on each count. Both plaintiff and defendant moved for summary judgment and plaintiff's motion was granted. The District Court entered judgment in favor of plaintiff for the sum of $10,000.

Sec. 26(b) of the Surplus Property Act of 1944 grants to the United States civil remedies against "Every person who shall use or engage in * * * any fraudulent trick, scheme, or device, for the purpose of securing or obtaining * * * for any person any payment, property, or other benefits from the United States or any Government agency in connection with the disposition of property under this Act * * * (1) shall pay to the United States the sum of $2,000 for each such act, and double the amount of any damage which the United States may have sustained by reason thereof, together with the costs of suit; or * * *."

As a defense the defendant alleged that it had pleaded *nolo contendere* in a criminal action based upon the same events; that in said criminal action the indictment contained five counts that corresponded exactly with the five counts in the instant action; that on June 23, 1949, as a result of its plea, a fine was imposed and defendant has paid an aggregate sum of $25,000; that plaintiff was not damaged and did not suffer any loss as it received the full offering price for the vehicles; that although the complaint was denominated "complaint for civil damages" this action is in fact, one to recover penalties, and, therefore, is barred by the prohibition against double jeopardy contained in the Fifth Amendment to the United States Constitution.

Defendant was a dealer engaged in buying, selling and repairing farm machinery and mining machinery. Under the advertisement and offer of sale, it had a non-priority right to purchase the motor vehicles thus offered for sale if any such remained after those having priority had been given an opportunity to purchase. The "false statements" charged were the statements qualifying the persons named in each of the counts for a priority right to purchase. At the sales in question all vehicles advertised were sold to those having or claiming priorities.

■ The Fifth Amendment guarantees that no person shall " * * * be subject for the same offense to be twice put in jeopardy of life or limb". However, "Congress may impose both a criminal and a civil sanction in respect to the same act or omission; for the double jeopardy clause prohibits merely punishing twice, or attempting a second time to punish criminally, for the same offense." Helvering v. Mitchell, 303 U. S. 391, 399, 58 S.Ct. 630, 633, 82 L.Ed. 917.

As stated in United States ex rel. Marcus v. Hess, 317 U.S. 537, 548, 63 S.Ct. 379, 386, 87 L.Ed. 443, "The application of the double jeopardy clause to particular cases has not been an easy task for the courts." In the same case, the court, 317 U.S. at page 549, 63 S.Ct. at page 386, quotes from Helvering v. Mitchell, supra, as follows: "The question for decision is thus whether (the statute in question) imposes a criminal sanction. That question is one of statutory construction.'" In other words, we must here endeavor to ascertain the legislative intent.

The section in question was enacted shortly after the decision of the Supreme Court in United States ex rel. Marcus v. Hess, supra. We may assume that the framers of § 26(b) were aware of that decision when they formulated § 26(b). It should be noted that the statute specifically describes subsection (b) as providing "civil remedies". The section

contains subsections (1, 2 and 3). The latter two provide only for multiple damages and are, without question, compensatory in nature. It is very doubtful that Congress intended to have the first of the three subsections a penal section. In fact, the pertinent committee report, S.Rep.No. 1057, 78th Cong., 2d Sess. p. 14, states that the United States has "* * * the option of selecting among three different measures of damages, * * *" It is a reasonable construction that Congress intended all three subparagraphs of § 26(b) to be *in pari materia*. It is also of significance that § 26(d) expressly provides that the "civil remedies provided in (§ 26) shall be in addition to all other criminal penalties and civil remedies provided by law."

 If § 26(b)(1) is of a penal nature the imposition of such penalty in addition to the sanctions provided by the criminal code, contravenes the prohibition against double jeopardy. Of course, statutes are to be construed, if possible, to avoid constitutional issues. United States v. Congress of Industrial Organizations, 335 U.S. 106, 120–121, 68 S.Ct. 1349, 92 L.Ed. 1849; Guessefeldt v. McGrath, 342 U.S. 308, 319, 72 S.Ct. 338, 96 L.Ed. 342.

Both sides discuss and the Government strongly relies upon United States ex rel. Marcus v. Hess, supra. There the defendant had pleaded *nolo* to an indictment to defraud the United States, and had paid the fine which was imposed. Thereafter, an action was brought under the False Claims Act, 31 U.S.C.A. 231 which contains language quite similar to § 26(b). It provides that a person who commits certain frauds upon the United States "* * * shall forfeit and pay to the United States the sum of $2,000, and, in addition, double the amount of damages which the United States may have sustained * * * together with the costs of suit; * * *." And, as here, the defendant sought to defend the civil action on the ground that the statute prescribed a penalty and that the double jeopardy provision of the Fifth Amendment barred the proceeding under the False Claims Act.

The court held that the provision that the Government was to recover $2,000, and double damages for each fraud in violation of the statutes was remedial and not penal. The court, 317 U.S. 549, 63 S.Ct. 387, said: "It is enough for present purposes if we conclude that the instant proceedings are remedial and impose a civil sanction. * * * We cannot say that the remedy now before us requiring payment of a lump sum (of $2000) and double damages will do more than afford the government complete indemnity for the injuries done it."

This construction by the Supreme Court of the statutory provision for the payment of $2000 plus double damages is, indeed, persuasive as to the construction to be given to § 26(b)(1). Both provisions relate to frauds upon the Government. The False Claims Act pertains to frauds in connection with claims submitted to the government. Sec. 26(b)(1) deals with frauds in procuring property from the government. Indeed, the language "forfeit and pay" in the False Claims Act is stronger than the language "pay" in § 26(b)(1). As the Supreme Court held that "forfeit and pay" did not convert the $2000 payment plus double damages provision in that Act to a penalty it seems to follow that it would also construe the milder provision of "pay" in § 26(b)(1) in the same manner.

We think the decision of Helvering v. Mitchell, supra, also indicates that § 26(b)(1) does not provide a penalty. In that case there had been a prosecution of defendant for fraud under the tax laws. Defendant sought to defend against the government's claim for an additional 50% over the tax owed, on the ground that its recovery was barred by the prohibition against double jeopardy. The court, pointing out that the basic question was one of statutory construction, held that Congress intended the 50% provision as a civil and not a criminal sanction.

884

The Court of Appeals for the Fifth Circuit, in United States v. Weaver, 207 F.2d 796, held that § 26(b) (1) was compensatory and not penal. That case involved the statute of limitations but whether the section was penal or compensatory was of prime importance in making the decision. The court said, pages 797–798: "This is not a criminal prosecution; it is not a civil action for a penalty; it is a civil action to recover an award of damages of a compensatory nature, payable to the United States for injuries to its property rights." [2]

In United States ex rel. Marcus v. Hess, supra, 317 U.S. at page 548, 63 S.Ct. at page 386, the court pointed out the difference between civil remedial actions brought primarily to protect the government from financial loss and actions intended to authorize criminal punishment to vindicate public justice, and that only the latter subject the defendant to "jeopardy" within the constitutional meaning. The defendant argues that the government here has not suffered a financial loss and hence the Marcus case cannot be considered as authority against its contentions. Defendant argues that the decision in the court below was on a motion for summary judgment and, therefore, we must consider as true, defendant's allegation that the United States suffered no actual financial loss because the priority purchasers actually paid the offering price. Defendant insists that if this action involves more than making the United States whole for actual financial loss, it involves punitive elements.

■ We may concede that if veterans and all others having priority did not purchase the motor vehicles advertised, that defendant or other persons having no priority might have purchased same. However, such assumption ignores realities. The shortage of civilian motor ve-

hicles in 1946–7 was very acute and was well known. Motor vehicles made up a large portion of the surplus property set aside for the exclusive use of veterans. The objectives of the Surplus Property Act in 1944 were to facilitate and regulate the orderly disposal of surplus property while giving effect to 20 enumerated purposes, among which were § 2(f) the giving of an opportunity to returning veterans to establish themselves in business, agriculture or professional life and § 2(h) the discouragement of disposal of surplus property to speculators.

We think the government was damaged in several respects and in a manner difficult to assess in monetary damages. The government wished to sell its surplus motor vehicles to certified veterans in order to assist in their reassimilation into civil life, and it was natural that the prices and conditions under which the government was willing to make these sales to veterans was more favorable than in the market place where gray and black market conditions were not uncommon. Defendant's fraud caused the government to deal with a class to which it did not desire to sell its surplus motor vehicles. Further, by its conduct if there were any vehicles left after supplying the wants of service men, various agencies of the Federal Government had next priority. If the supply was exhausted by frauds such as perpetrated by the defendant there was no other place for Government Agencies to purchase needed vehicles except on the open market.

■ It is well settled that in addition to actual losses the government is entitled to reimbursement of costs in connection with ferreting out and investigation of the frauds. Helvering v. Mitchell, supra, 303 U.S. at page 401, 58 S.Ct. at page 634; Stockwell v. United States, 13 Wall. 531, 547.

2. The Court of Appeals for the Sixth Circuit in United States v. Witherspoon, 211 F.2d 858, held that § 26(b) (1) was penal. It is interesting to note that the opinion made no mention of Helvering v. Mitchell, supra, or United States ex rel. Marcus v. Hess, supra, nor why these decisions which we regard as persuasive, were regarded by that court as inapplicable. In our judgment the Witherspoon case was incorrectly decided.

We hold that § 26(b) (1) is not penal in nature and that the judgment entered in favor of the government must be and is

Affirmed.