REX TRAILER CO., INC. *v.* UNITED STATES.

No. 46. Argued December 5, 1955.—Decided January 9, 1956.

*Gustave H. Dongus* argued the cause for petitioner. With him on the brief was *Bernard Stroyman.*

*Melvin Richter* argued the cause for the United States. With him on the brief were *Solicitor General Soboloff* and *Assistant Attorney General Burger.*

MR. JUSTICE CLARK delivered the opinion of the Court.

Petitioner contends that this action brought by the Government to recover \$2,000 on each of five counts of a complaint based on § 26 (b)(1) of the Surplus Property Act of 1944 [1] places it twice in jeopardy in violation

[1] Section 26 of the Surplus Property Act of 1944, 58 Stat. 765, 780, 50 U. S. C. App. (1946 ed.) § 1635, provided in pertinent part:

"(b) Every person who shall use or engage in or cause to be used or engaged in any fraudulent trick, scheme, or device, for the purpose of securing or obtaining, or aiding to secure or obtain, for any person

of the Fifth Amendment. In an earlier proceeding it had pleaded nolo contendere to a five-count indictment bottomed on the same five transactions and paid fines in the aggregate amount of $25,000. In the present case the District Court granted the Government's motion for summary judgment, and the Court of Appeals affirmed, 218 F. 2d 880. We granted certiorari, 349 U. S. 937, to resolve an asserted conflict between the decisions of the Courts of Appeals.[2]

At the close of World War II the Government was faced with the problem of disposing of vast quantities of surplus war materials. A large part of this property, valued at many billions of dollars, was needed to satisfy the civilian demand caused by wartime shortages in consumer goods. To facilitate and regulate the orderly

---

any payment, property, or other benefits from the United States or any Government agency in connection with the disposition of property under this Act; or who enters into an agreement, combination, or conspiracy to do any of the foregoing—

"(1) shall pay to the United States the sum of $2,000 for each such act, and double the amount of any damage which the United States may have sustained by reason thereof, together with the costs of suit; or

"(2) shall, if the United States shall so elect, pay to the United States, as liquidated damages, a sum equal to twice the consideration agreed to be given by such person to the United States or any Government agency; or

"(3) shall, if the United States shall so elect, restore to the United States the property thus secured and obtained and the United States shall retain as liquidated damages any consideration given to the United States or any Government agency for such property.

.        .        .  .        .

"(d) The civil remedies provided in this section shall be in addition to all other criminal penalties and civil remedies provided by law."

[2] In considering whether the statute of limitations contained in 28 U. S. C. § 2462 applied to § 26 (b) (1) of the Surplus Property Act, the Fifth Circuit held § 26 (b) (1) to be a civil remedy in *United States* v. *Weaver,* 207 F. 2d 796, 797, and the Sixth Circuit held it to be penal in *United States* v. *Witherspoon,* 211 F. 2d 858.

disposal of this property, Congress passed the Surplus Property Act of 1944, 58 Stat. 765. The stated purposes of this statute included the re-establishment of returning veterans in business, agricultural, or professional life, the discouragement of speculation in surplus property, and the elimination of unusual and excessive profits to speculators. The concern of Congress for returning veterans is emphasized by its 1946 Amendment to the Act, 60 Stat. 168, which gave veterans a priority for the purchase of surplus property, second only to that of the Federal Government, and authorized the Administrator to assign the highest priority to veterans for the purchase of certain items. This legislation thus afforded veterans an opportunity to purchase goods not available elsewhere at a fair price and on good credit terms. The benefits were of great value to the millions of men and women returning to civilian life just after the war.

With this background in mind we may turn to the facts of the present case. In June 1947 the Rex Trailer Company purchased five motor vehicles from the War Assets Administration at Tinker Field, Oklahoma. Rex had only a nonpriority right of purchase under the Surplus Property Act; but, by the fraudulent use of the names of five persons possessing veteran priority rights, it was able to purchase the vehicles. Admittedly, the terms of the statute were violated, but the record does not show petitioner's gain from the fraud. The United States limited itself to the recovery of the sum of $2,000 for each of the five overt acts alleged in its complaint.

Petitioner's sole contention is that § 26 (b)(1) provides a criminal penalty and, having once been convicted and fined for the transactions in question, it cannot again be subjected to punishment. The only question for our decision, then, is whether § 26 (b)(1) is civil or penal, for "Congress may impose both a criminal and civil sanction in respect to the same act or omission; for the double

jeopardy clause prohibits merely punishing twice, or attempting a second time to punish criminally, for the same offense." *Helvering* v. *Mitchell*, 303 U. S. 391, 399.

We conclude that the recovery here is civil in nature. The Government has the right to make contracts and hold and dispose of property, and, for the protection of its property rights, it may resort to the same remedies as a private person. *Cotton* v. *United States*, 11 How. 229. Liquidated damages are a well-known remedy, and in fact Congress has utilized this form of recovery in numerous situations. In all building contracts, for example, Congress has required the insertion of a liquidated-damage clause which "shall be conclusive and binding upon all parties" without proof of "actual or specific damages sustained . . . ." 32 Stat. 326, 40 U. S. C. § 269. Liquidated-damage provisions, when reasonable, are not to be regarded as penalties, *United States* v. *United Engineering & Contracting Co.*, 234 U. S. 236, 241, and are therefore civil in nature.

In § 26 of the Surplus Property Act, Congress has provided three alternative remedies. The first provides a recovery of $2,000 plus double the amount of the damage sustained; the second permits a recovery "as liquidated damages" of twice the consideration agreed upon; the third permits the Government to recover the property and retain "as liquidated damages" the consideration it received. These alternative remedies are set out in three consecutively numbered subsections of § 26 (b). All three were recognized as civil remedies by Congress before the bill was passed,[3] and the conclusion is inescapable

---

[3] In referring to these provisions, the Senate Committee on Military Affairs described them as providing for "the civil liability of persons who engage in false, fraudulent, or fictitious activities, or conceal or misrepresent material facts, or act with intent to defraud the United States . . . . The United States is given the option of electing among three different measures of damages." S. Rep. No. 1057, 78th Cong., 2d Sess. 13–14.

that each was of the same nature and designed to serve the same purpose. Further, Congress provided in § 26 (d) that: "[t]he civil remedies provided in this section shall be in addition to all other criminal penalties and civil remedies provided by law."

The case of *United States ex rel. Marcus* v. *Hess*, 317 U. S. 537, involved a provision of the False Claims Act, R. S. §§ 5438, 3490, 31 U. S. C. § 231, essentially the equivalent of § 26 (b)(1).[4] In *Marcus*, as here, the defendant had pleaded nolo contendere in an earlier criminal prosecution based on the same transaction. This Court rejected the petitioner's contention of double jeopardy and held that the statute involved was remedial and not penal, since it was unable to say that the provision for $2,000 plus double damages would "do more than afford the government complete indemnity for the injuries done it." 317 U. S., at 549. In concluding, it recognized that "[t]he inherent difficulty of choosing a proper specific sum which would give full restitution was a problem for Congress." 317 U. S., at 552.

It is insisted, however, that the failure of the Government to allege specific damages precludes recovery here. But there is no requirement, statutory or judicial, that specific damages be shown, and this was recognized by

---

[4] The False Claims Act provides that the defrauder "shall forfeit and pay to the United States the sum of $2,000, and, in addition, double the amount of damages which the United States may have sustained by reason of the doing or committing such act, together with the costs of suit; and such forfeiture and damages shall be sued for in the same suit." *United States ex rel. Marcus* v. *Hess*, holding this provision to provide a compensatory civil remedy, was decided on January 18, 1943. The Surplus Property Act, which employed virtually identical language in § 26 (b)(1), was enacted on October 3, 1944. Under these circumstances it would be very difficult to say that these words which provided a civil remedy in the False Claims Act were not intended to provide the same kind of remedy in the Surplus Property Act.

the Court in *Marcus*.[5]   The Government's recovery here is comparable to the recovery under liquidated-damage provisions which fix compensation for anticipated loss.   As this Court recognized in *Priebe & Sons* v. *United States,* 332 U. S. 407, 411–412, liquidated damages "serve a particularly useful function when damages are uncertain in nature or amount or are unmeasurable, as is the case in many government contracts. . . ."   And the fact that no damages are shown is not fatal.   Section 26 (b)(1) merely accomplishes the intended result of Congress by authorizing a separate proceeding for the recovery of a lump sum in damages.

It is obvious that injury to the Government resulted from the Rex Trailer Company's fraudulent purchase of trucks.   It precluded bona fide sales to veterans, decreased the number of motor vehicles available to Government agencies, and tended to promote undesirable speculation.[6]   The damages resulting from this injury may be difficult or impossible to ascertain, but it is the

---

[5] On several of the projects involved in the *Marcus* case, fraud was discovered by the Government in time for payments to be withheld. At trial in the District Court defendants urged that there could be no recovery of a penalty or forfeiture in these instances where no actual damage could be shown.   The District Court held that failure to show actual damage in these instances would not preclude recovery under the statute.   *United States ex rel. Marcus* v. *Hess,* 41 F. Supp. 197, 218.   The judgment of the District Court was affirmed here. See *United States* v. *Rohleder,* 157 F. 2d 126, 129.

[6] It seems quite probable that there is also an element of unjust enrichment to the Rex Trailer Company from its fraudulent purchases.   The record is silent on this point and we have not considered it in arriving at our decision, but the fact that Rex was willing to resort to fraud to purchase the vehicles at the veteran's price strongly suggests an unfair gain from the purchases.   The price for sales to priority purchasers was fixed by regulations published in 32 CFR (1946 Supp.) §§ 8302.8 (d), 8302.11, which provided: "Disposal agencies shall fix the fair value at which property shall be acquired by priority claimants.   Such a fair value shall not be greater

function of liquidated damages to provide a measure of recovery in such circumstances. On this record it cannot be said that the measure of recovery fixed by Congress in the Act is so unreasonable or excessive that it transformed what was clearly intended as a civil remedy into a criminal penalty.

*Affirmed.*

MR. JUSTICE FRANKFURTER concurs in the judgment substantially for the reasons given by him in his opinion in support of the *Marcus* decision. 317 U. S., at 553.

---

than the lowest price which is offered to any trade level at the time of acquisition by the priority claimant, or where the fair value is fixed after examining competitive bids, it shall not be greater than the lowest acceptable bid."