**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

**Max RUBIN, Defendant-Appellee.**
**Nos. 11748, 11749.**

United States Court of Appeals
Seventh Circuit.

April 30, 1957.

Melvin Richter, Atty., U. S. Dept. of Justice, Washington, D. C., Robert Tieken, U. S. Atty., Chicago, Ill., George Cochran Doub, Asst. Atty. Gen., Robert S. Green, Dept. of Justice, Washington, D. C., on the brief, for the United States.

Thomas A. Keegan, Rockford, Ill., for appellee.

Before MAJOR, LINDLEY and SCHNACKENBERG, Circuit Judges.

LINDLEY, Circuit Judge.

The Government sued to recover from defendant penalties provided by § 26(b) of the Surplus Property Act[1], seeking judgment for some 22 violations. The complaint listed 7 veterans, with whom, it was averred, defendant had entered into fraudulent conspiracies to procure surplus property from the Government. The cause was tried without a jury. The court found for plaintiff as to transactions under priority certificates issued to veterans Falth, Larson and Hoar, but dismissed the suit as to purchases made under certificates issued to the other four, Hoover, Matranga, Hobel and Johnson. On appeal the Government does not question the judgment as to purchases made in the names of the latter four, except as to those made under Hoover's certificate. It contends that the court should have found that defendant violated the Act in the transactions in which Hoover was concerned; that the finding against the Government as to those transactions is clearly erroneous, and that the court erred further in concluding that defendant had committed only three violations. Accordingly, we are confronted with the question, first, of whether the court's finding as to the Hoover purchases is clearly erroneous and, second, whether the court applied the correct legal formula in determining the penalties.

To an indictment charging him with having knowingly caused to be made false representations in the applications of Hoover, Matrango and Hobel for surplus property, on March 16, 1949, defendant pleaded guilty and was sentenced to pay a fine. The indictment was returned by the April, 1948 grand jury. It charged in the first of three counts that defendant knowingly induced Hoover to make false statements in the latter's veteran's application to buy Government surplus property, such as clothing and textile products; that in his application the veteran falsely represented that he was engaged in the operation of a wholesale business, with a warehouse, office space and railroad siding facilities, operated as an individual proprietorship under his own name, and was purchasing the merchandise for his own personal use in maintenance of his business; that defendant knew that these statements were false, and that the veteran was, in fact, purchasing the property for the sole use of defendant. The second and third counts charged similar offenses with reference to applications of two other veterans, Luke S. Matranga and James S. Hobel. The crux of the charge, obviously, was that the defendant had knowingly and willfully caused the veteran to make false and fraudulent statements in his application to purchase surplus property. The indictment contained no claim that defendant had actually procured goods in pursuance of the application.

In the civil complaint in this case the United States sought to recover from defendant the civil penalties fixed by Title 40 U.S.C.A. § 489. This statute provides, in §§ (b) (1) and (2), in substance, that every person who shall participate or engage in, an agreement, conspiracy or scheme, for the purpose of securing or obtaining property or other benefits from the United States in connection with the procurement of surplus property (1) shall pay to the United States the sum of $2,000 for each such act; or (2) shall, if the United States shall so elect, pay to the Government, as

---

1. Section 26(b) of the Surplus Property Act of 1944 has been carried into and merged in § 209(b) of the Federal Property and Administrative Services Act of 1949 and, as such, is found in 40 U.S. C.A. § 489(b).

liquidated damages, a sum equal to twice the consideration agreed to be delivered to such person. The complaint charged that defendant had made use of a fraudulent scheme in securing property of the United States under the Surplus Property Act of 1944; that, utilizing the fraudulent applications described, defendant secured certain surplus property from the War Assets Administration on various dates. It prayed judgment for $2,000 for each such "false act."

■ It thus appears that in the criminal case the charge was active participation by defendant in fraudulent representations in the veterans' applications to buy. The truth of this averment was admitted by the plea of guilty. Local 167, etc. v. United States, 291 U.S. 293, 54 S.Ct. 396, 78 L.Ed. 804. However, in the civil complaint, in order to justify recovery of the statutory penalty, the Government charged, in addition, that the fraudulent applications had been employed by defendant in procuring merchandise. As this claim was not involved in the criminal charge of making fraudulent applications, but included the further steps on the part of the defendant in actually making use of the applications in procuring merchandise, obviously, the plea of guilty did not admit it, and it was incumbent upon the Government to show not only what had been determined in the criminal case, namely, that defendant caused to be made fraudulent applications, but also the additional fact, not then in issue, that defendant did in fact procure wrongfully, surplus property of the Government. Consequently, though the plea was *res adjudicata* of all averments of the indictment, well pleaded, it was not decisive of the additional charge first made in the civil action that defendant had actually wrongfully procured property. This difference between the averments of the indictment and those of the civil complaint is evidently what led the court to say that the plea of guilty was proper but not conclusive evidence, meaning, obviously, that it was not conclusive evidence of the additional charge that defendant had later actually procured property.

■ To meet this obligation the Government called as witnesses both defendant and Hoover. Rubin was an adverse witness, but there was no such limitation as to Hoover, who was presented as an ordinary witness. Hoover testified that he owned 51% of all property purchased under his application. Under the regulation, 10 Fed.Reg., 12849, ownership of 50% by the veteran is a qualifying status. There are discrepancies in Hoover's testimony and in that of Rubin, but the trial court was the judge of the credibility of the witnesses and had full opportunity to determine what credence should be extended to them. At the conclusion of the evidence it found that the Government had failed to sustain its averments of fraudulent purchases as to Hoover. In view of Rule 52(a) of the Federal Rules of Procedure, 28 U.S.C.A., therefore, we are not justified in saying, as a matter of law, that the finding was clearly erroneous. Consequently, the judgment and finding for defendant as to the Hoover transactions must be affirmed.

The Government complains because, as to each of the veterans, although a number of different purchases of different properties were made at various times upon the applications of each, the court treated all such purchases upon each application as one transaction and assessed for all of them only one penalty of $2,-000. This, it insists, was error, because, on its theory of the case, each purchase constituted a separate act subjecting defendant to liability for the penalty. Hence, the Government says, there should have been judgment for a penalty for each of the different purchases, some 14 in number, or the alternate remedy of double the value of the merchandise procured.

The court found that defendant had engaged in a combination, conspiracy or scheme to use the fraudulent veterans' certificates of Falth, Larson and Hoar in procuring wrongfully war surplus property; that, upon Falth's priority certificate, defendant, from time to time,

made purchases 9 in number; that upon Larson's certificate, defendant made four wrongful purchases at four different times; and that under the certificate of Hoar, defendant made one purchase. In all, said the court, there were 14 purchases made under fraudulent certificates. Yet, the court held that there had been only one violation by defendant as to all transactions under the certificate of each veteran; that, as a matter of law, making an applicaion to purchase under any one certificate and multiple separate purchases at different times constituted one series to be considered as one act. Consequently, the court entered judgment against defendant for $2,000 for all 9 purchases made under one application; $2,000 for four purchases made under another application, and $2,000 for one purchase made under the other application.

■ We have observed the language of § 26(b) of the Surplus Property Act. While there are no precedents, we think the situation is not lacking in analogy to others where penalties have been assessed. In United States ex rel. Marcus v. Hess, 317 U.S. 537, 552, 63 S.Ct. 379, 388, 87 L.Ed. 443, the court used this language: " * * * under the circumstances of this case each project can properly be counted separately. The incidence of the fraud on each additional project is as clearly individualized as is the theft of mail from separate bags in a post office, Ebeling v. Morgan, 237 U.S. 625, 35 S.Ct. 710, 59 L.Ed. 1151; and see Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306. Cf. Gavieres v. United States, 220 U.S. 338, 342, 31 S.Ct. 421, 422, 55 L.Ed. 489. Under respondents' view the lump sum to be paid would be about $30.00 a project; and we cannot suppose that Congress meant thus to reduce the damages recoverable for respondents' fraud and thereby allow them to spread the burden progressively thinner over projects each of which individually increased their profit." Similar reasoning may be found in other cases, such as Thierry v. Gilbert, 1 Cir., 147 F.2d 603; Lambur v. Yates,

8 Cir., 148 F.2d 137; United States v. Grannis, 4 Cir., 172 F.2d 507, certiorari denied 337 U.S. 918, 69 S.Ct. 1160, 93 L. Ed. 1727; United States v. Rohleder, 3 Cir., 157 F.2d 126; United States v. Rex Trailer Co., 7 Cir., 218 F.2d 880, affirmed 350 U.S. 148, 76 S.Ct. 219, 100 L.Ed. 149. The reasoning in these and other decisions, dealing with other statutes, makes it clear, we think, that it was the intent of Congress to require assessment against defendant of a penalty of $2,000 for each overt act performed by him in pursuance of the conspiracy with the veterans into which he had entered. While the possibility of such an event is very remote, it is not impossible that one who is using a fraudulent application of a veteran, may, on the Atlantic coast, make a fraudulent purchase, be apprehended and subjected to a penalty of $2,000, and, thereafter, utilize the same certificates on the western coast in making other purchases. To say that he is immune from any penalty for the second purchase because he has already paid a penalty for making use of the certificate, is to our way of thinking, absurd. The case is not unanalogous to a suit for damages under the Anti-Trust Act, 15 U.S.C.A. §§ 1–7, 15 note, which charges conspiracy and specifies certain overt acts. The defendant to such an action may not escape liability merely because he has paid the penalty for the conspiracy. He remains liable in addition for each separate act as to which there is a statutory liability. In other words, the original procurement of the false certificates and defendant's participation therein was a part of the conspiracy, but when defendant later is found to have made several purchases in pursuance of the conspiracy, he cannot well claim that there is but one penalty due. The language of the Supreme Court in the Marcus case to the effect that we cannot assume that Congress meant thus to reduce damages recoverable for fraud and thereby allow the defrauders to spread the burden progressively thinner by future and other acts is peculiarly pertinent. The defendant did not receive a grant of right from the Government, when he made use

of the certificate to make one purchase, to pay a penalty therefor, and thus, become immune from the penalty in making other fraudulent purchases. Inasmuch as each improper purchase in and of itself violated the Act, each, we think, requires judgment for the statutory damages of $2,000.

We should bear in mind that in its prayer for damages, the Government asked alternatively for $2,000 for each purchase or double the amount of the value of all purchases, which, it is asserted, would have been over $100,000. Consequently, the court had a right to measure the damages by either formula, but it was not authorized to assess damages for one purchase and to refuse to do so for others.

Accordingly, the judgment as to the liability for transactions under Falth's and Larson's certificates is vacated with directions to the district court to enter judgment for $2,000 in favor of plaintiff for each of the 13 purchases made under their applications. In all other respects the judgment is

Affirmed.