**UNITED STATES of America**

v.

Nathan L. POSNER, Esquire, and S. Jerome Epstein, Executors of the Estate of Abraham Epstein, Deceased, Appellants.

Nos. 12752, 12753.

United States Court of Appeals
Third Circuit.

Argued June 1, 1959.

Decided Aug. 12, 1959.

veteran, Jack Grollman in a fraudulent scheme involving the improper use of Grollman's veteran's preference to obtain for Epstein and two corporations controlled by him surplus property which the government had made available for sale. Invoking a civil remedy provided by the Surplus Property Act, 63 Stat. 392, 40 U.S.C.A. § 489, the government recovered double the consideration involved in one transaction and was denied recovery in another. Cross appeals followed.

Concerning government property alleged to have been acquired for transfer to Regal Corrugated Box Co., one of the Epstein controlled corporations, there was evidence that Epstein suggested to Jack Grollman, one of his employees, that Grollman obtain a veteran's preference certificate and use it to purchase certain lithography and paper products from the War Assets Administration. There was also evidence that Epstein and Grollman understood before the purchases in suit were made that the property to be acquired was intended for use in the business of Regal. Pursuant to this plan Epstein assisted and directed Grollman in the preparation and execution of an application for a veteran's priority certificate. In that application there appear statements, which Epstein knew to be false, that Grollman was the proprietor of a business at a stated address with a stated number of employees.

Epstein then used his standing and credit to obtain a bank loan, loans from Regal and other financing to provide the money needed for the purchase of surplus property in the name of Grollman. Beyond that Epstein actually selected the property to be purchased. Grollman then went through the procedures of buying the surplus paper products in his own name and reselling the merchandise to Regal at a price, determined by Epstein, which was substantially in excess of the government selling price.

Regal paid this resale price to Grollman who, at Epstein's direction, retained a percentage of the resale profit to be used to pay income tax on the gain. The amount of the profit after taxes was then

Richard Reifsnyder, Asst. U. S. Atty., Philadelphia, Pa. (Harold K. Wood, U. S. Atty., Philadelphia, Pa., on the brief), for the United States.

Nathan L. Posner, Philadelphia, Pa. (Donald Brown, J. Victor O'Brien, Fox, Rothschild, O'Brien & Frankel, Philadelphia, Pa., on the brief), for Posner and Epstein.

Before GOODRICH, KALODNER and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

The complaint of the United States in this case alleges that the original defendant, Abraham Epstein, who died and whose executors were substituted as defendants before trial, joined with a war

paid to Epstein by the device of drawing and cashing Grollman's checks payable to "cash" and delivering the currency to Epstein. Thus, the evidence indicated, as the district court found, that it was not Grollman but Epstein and Regal who were the principal parties and beneficiaries in this series of transactions.

■ The statute under which this suit has been brought reads as follows:

"(b) Every person who shall * * * enter into an agreement, combination, or conspiracy to use * * * any fraudulent trick, scheme, or device, for the purpose of securing or obtaining, or aiding to secure or obtain, for any person any payment, property, or other benefits from the United States or any Federal agency in connection with the procurement, transfer, or disposition of property under this chapter, * * *."

\* \* \* \* \* \*

"(2) shall, if the United States shall so elect, pay to the United States, as liquidated damages, a sum equal to twice the consideration agreed to be given by the United States or any Federal agency to such person or by such person to the United States or any Federal agency, as the case may be; * * *." 40 U.S. C.A. § 489(b) (2).

In terms of this statute the district court quite properly viewed the evidence as clearly disclosing Epstein as the initiator, principal actor and principal beneficiary of a scheme to obtain government property and dispose of it at a profit to himself through falsely representing that a veteran was purchasing the property in his own interest. As we read the evidence, it is strongly persuasive that Grollman was simply not buying and reselling government property on his own account, but was merely an agent, controlled and directed by Epstein, purchasing and reselling in Epstein's interest while using quite transparent procedures to set up a merely colorable proprietorship of a veteran. For under the transaction as disclosed in the record there appears to have been no time at which Epstein did not direct and control every significant step in the enterprise. Add the fact that the resale profits after estimated taxes were surrendered to Epstein and it seems entirely clear that he was the principal and the real party in interest.

■ A separate point is made that subsection 489(b) (2) of Title 40, as quoted above, expressly limits the United States to the recovery of twice the consideration moving to or from "such person". It is then argued that "such person" means the person who is to be held liable. But careful reading of the first sentence of subsection (b) seems to us to indicate that "such person" as used in the subsection (2) means, in relation to the language of subsection (b), "any person" who gets government property. At the same time liability is imposed not merely on "any person" who gets government property by fraud, but more broadly, on "every person" who participates in the fraudulent scheme. Even if we should be wrong in this analysis we would still have no difficulty in supporting the conclusion that it was Epstein through his agent Grollman who, within the meaning of the statute, received the property in suit from the government and resold it at a profit to Regal.

To avoid the conclusion reached by the court below as to the true nature of the transactions in suit, the appellants argue that the finding that the profits on the resale to Regal were turned over to Epstein was based on the inadmissible hearsay and, therefore, improper. But Grollman himself testified:

"* * * The balance of the profit [after setting aside a sum for taxes] was to be given back to Mr. Epstein —was given back to Mr. Epstein in the form of various and several checks drawn to the order of cash.

\* \* \* \* \* \*

"* * * Either I would cash them or someone else would cash them, and the actual cash was given to Mr. Epstein."

Here we have a direct statement of relevant facts and events offered as matter within the knowledge of the witness. Had his testimony on direct or cross-examination indicated that he was merely repeating what someone else had told him, a hearsay problem would have been presented. But nothing of that sort appears. On the record the testimony was unquestionably competent.

One other point merits mention. Defendant Epstein died before trial and this action has been defended by his executors. They urge that the proceeding is quasi-criminal and, therefore, that it abated upon the death of Epstein. The government relies upon the provision of the Act of June 25, 1948, 62 Stat. 971, 28 U.S.C. § 2404 that "[a] civil action for damages commenced by or on behalf of the United States or in which it is interested shall not abate on the death of a defendant but shall survive and be enforceable against his estate as well as against surviving defendants."

Since United States v. Doman, 3 Cir., 1958, 255 F.2d 865, affirmed per curiam sub nom. Koller v. United States, 1959, 359 U.S. 309, 79 S.Ct. 755, 3 L.Ed.2d 828, we think there can be no doubt but that this proceeding is properly classified as a civil action for a remedy of compensatory nature which does not abate. Cf. Rex Trailer Co. v. United States, 1956, 350 U.S. 148, 76 S.Ct. 219, 100 L.Ed. 149; United States v. Grannis, 4 Cir., 1949, 172 F.2d 507.

In addition to the paper purchased for the ultimate use of Regal which is the subject of the foregoing discussion, other paper products were purchased in the name of Grollman and resold to Allied Shipping Supply Co. The district court found no violation of Section 489(b) (2) in this transaction and the government has appealed.

We have examined the evidence concerning this transaction. We agree with the court below that there was significant evidence indicating a major beneficial interest of Grollman himself in this transaction and in the gain which resulted from it. It is conceded that in this suit where fraud is an essential element of the claim, the government must prove its case by clear and convincing evidence. After a reasoned and proper evaluation of the evidence the district court as trier of fact did not find the showing clear and convincing that Grollman was merely an agent, as distinguished from a proprietor with a major interest in the purchase followed by resale to Allied Shipping Supply Co. We find no justification for disturbing this conclusion.

The judgment will be affirmed.