COMMONWEALTH of Kentucky,
Appellant,

v.

LAWSON MARDON FLEXIBLE
PACKAGING, INC.,
Appellee.

No. 1997–CA–001366–MR.

Court of Appeals of Kentucky.

March 5, 1999.

As Modified March 26, 1999.

Case Ordered Published by
Supreme Court Feb. 16, 2000.

Discretionary Review Denied
by Supreme Court Feb. 16, 2000.

A.B. Chandler, III, Atty. Gen., Matthew D. Nelson, Asst. Atty. Gen., Frankfort, for Appellant.

John H. Harralson, III, Louisville, for Appellee.

BEFORE: EMBERTON, GARDNER, and SCHRODER, Judges.

## OPINION

GARDNER, Judge.

The Commonwealth of Kentucky appeals from an order of the Shelby Circuit Court entered on May 29, 1997, dismissing with prejudice an indictment charging Lawson Mardon Flexible Packaging, Inc. with one count of reckless homicide. We reverse and remand for further proceedings.

On August 30, 1993, an explosion and fire occurred at the manufacturing plant of Lawson Mardon Flexible Packaging, Inc.[1] (hereinafter Lawson Mardon) in Shelbyville, Kentucky. The explosion occurred in a parts washing room where several employees were using welding equipment to repair a washer. Three employees were seriously injured and one employee, Paul Bierly, was killed. Upon investigation, the State Fire Marshall determined that the explosion was caused when the welding equipment ignited flammable chemicals in a washing tank.

Shortly after the incident, the Kentucky Department of Workplace Standards conducted an investigation. Based on an inspection of the plant, the Division of Compliance issued three citations charging Lawson Mardon with violations of the Kentucky Occupational Safety and Health (hereinafter KOSH) Standards promulgated pursuant to Kentucky Revised Statute (KRS) 338.051. Specifically the Division of Compliance cited the company for violations of 29 CFR 1910.252 (adopted by 803 KAR 2:316) and 803 KAR 2:310 Section 1(2). The citations alleged the following: 1) the individual responsible for authorizing the welding did not designate all appropriate precautions to be followed such as checking the area for explosive conditions (29 CFR 1910.252(a)(2)(iv)); 2) the employer failed to ensure that each employee assigned to the fire watch where the welding was being performed was trained in the use of fire extinguishers (29 CFR 1910.252(a)(2)(iii)(B)); and 3) the employer had not provided adequate first-aid training of employees (803 KAR 2:310 Section 1(2)). The citations ordered abatement of the conditions involved in the violations and assessed a total civil penalty of $28,000. Lawson Mardon challenged the citations by filing a notice of contest pursuant to 803 KAR 2:140. In December 1993, the Secretary of Labor filed an administrative complaint before the Kentucky Occupational Safety and Health Review Commission alleging serious violations of the Kentucky safety and health regulations.

In June 1994, while the administrative complaint was pending, the Shelby County Grand Jury indicted Lawson Mardon on one felony count of reckless homicide (KRS 507.050) arising from the August 30, 1993 incident. The indictment alleged that the company "[r]ecklessly caused the death of Paul Bierly by failing to perceive the substantial and justifiable risk of explosion which constituted a gross deviation from the standard of care that a reasonable person would observe in the situation as it then existed." Under KRS 534.050(1)(a), the company was subject to a maximum penalty of $20,000 upon a conviction of reckless homicide, a Class D felony.

---

1. At the time of the incident, the company was known as Alusuisse Flexible Packaging, Inc. The company later changed its name to Lawson Mardon Flexible Packaging, Inc.

While the criminal indictment was pending, the parties in the administrative proceeding reached a settlement. Under the settlement, Lawson Mardon agreed to withdraw its notice of contest of the three citations, to complete abatement of the conditions referred to in the citations, to pay the $28,000 penalty within thirty days, and to comply with all applicable provisions and standards of Chapter 338 in the future. The KOSH Review Commission approved the settlement in February 1995, and it became final.

Following completion of initial discovery, Lawson Mardon filed a motion to dismiss the criminal indictment in June 1996. It maintained that the criminal prosecution violated the Fifth Amendment of the United States Constitution as applied to the states through the Fourteenth Amendment. Lawson Mardon argued that the Commonwealth was prohibited from bringing a successive prosecution after the company had already been punished by the administrative penalties. In support of its position, Lawson Mardon relied on the case of *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989). After the Commonwealth filed a response, the trial court held a hearing and later denied the motion in December 1996.

On January 2, 1997, Lawson Mardon filed a motion to reconsider the denial of the motion to dismiss. Again the Commonwealth filed a response arguing the double jeopardy claim was inadequate under the "same elements" test established in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), as reaffirmed in *United States v. Dixon,* 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993). The Commonwealth contended that Lawson Mardon's reliance on *Halper* was misplaced because the *Blockburger* test was satisfied.

On May 29, 1997, the trial court issued an opinion and order granting the company's motion to dismiss the indictment. The court held that the civil administrative penalties were "punishment" for purposes of double jeopardy as defined in *United States v. Halper, supra,* and that the civil administrative action and the criminal prosecution required proof of the same elements under *Blockburger.* This appeal followed.

The Commonwealth now argues that the trial court committed reversible error in granting Lawson Mardon's motion to dismiss the indictment.[2] Specifically it argues that the double jeopardy clause is not implicated by civil fines, and in support of this argument maintains that the actions of the Commission and the grand jury related to separate and distinct bad acts. Having closely studied the facts, the law, and the arguments of counsel, we must reverse and remand.

The Fifth Amendment provides that no individual shall "be twice put in jeopardy of life and limb." This clause has been interpreted to protect a criminal defendant from three distinct state actions: 1) a second prosecution for the same offense after acquittal; 2) a second prosecution for the same offense after conviction; and 3) multiple punishments for the same offense. *United States v. Ursery,* 518 U.S. 267, 271–74, 116 S.Ct. 2135, 2139–40, 135 L.Ed.2d 549 (1996); *Ohio v. Johnson,* 467 U.S. 493, 498, 104 S.Ct. 2536, 2540, 81 L.Ed.2d 425 (1984). In the matter at bar, we are concerned only with the "multiple punishments" aspect of double jeopardy. The dispositive question, then, is whether the civil fine represents "punishment" for purposes of Fifth Amendment protection.

In determining whether a sanction is properly characterized as civil or criminal (and accordingly whether it runs afoul of Fifth Amendment Protection), the United

**2.** The Commonwealth erroneously concludes its appellate brief by stating "[f]or the foregoing reasons, the judgment below should be affirmed." It concludes its reply brief by stating "[f]or the foregoing reasons ... the trial court's order dismissing the indictment should be reversed."

States Supreme Court has set forth a two-part inquiry. In *Hudson v. United States*, 522 U.S. 93, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997), it stated that the trial court must determine 1) whether the legislative body intended the designated sanction or penalty to be civil, and 2) even if it was intended as civil in nature whether its effect is so punitive that it renders the sanction criminal despite its civil purpose.[3] The court stated as follows:

> Whether a particular punishment is criminal or civil is, at least initially, a matter of statutory construction. (citation omitted.) A court must first ask whether the legislature, "in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other." (citation omitted.) Even in those cases where the legislature "has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect," ... as to "transfor[m] what was clearly intended as a civil remedy into a criminal penalty," *Rex Trailer Co. v. United States*, 350 U.S. 148, 154, 76 S.Ct. 219, 222, 100 L.Ed. 149 (1956). *Hudson*, 118 S.Ct. at 493, 118 S.Ct. 488.

■ In determining whether the statutory scheme is so punitive as to transform it from a civil remedy into a criminal penalty, *Hudson* directs us to what it describes as the "useful guideposts" set out in *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 168–69, 83 S.Ct. 554, 567–68, 9 L.Ed.2d 644 (1963). *Hudson*, 118 S.Ct. at 493–94. They are (1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as a punishment; (3) whether it comes into play only on a finding of scienter; (4) whether its operation will promote the traditional aims of punishment-retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and, (7) whether it appears excessive in relation to the alternative purpose assigned.

■ Applying these principles to the facts at bar, we must conclude that the penalties assessed against Lawson Mardon under KOSH regulations were civil in nature. First, KRS 338.011 clearly states that its purpose is to promote worker safety and health. It states in relevant part that,

> Therefore, the General Assembly declares that it is the purpose and policy of the Commonwealth of Kentucky to promote the safety, health and general welfare of its people by preventing any detriment to the safety and health of all employees, both public and private, covered by this chapter, arising out of exposure to harmful conditions and practices at places of work and otherwise to preserve our human resources by providing for education and training, inspection of workplaces, consultation, services, research, reports and statistics, and other means of furthering progress in the field of occupational safety and health.

■ Second, KRS 338.991 provides for "civil penalties" for violations of KOSH regulations including up to $7,000 for each serious violation under Subsection (2). The designation of the penalties as civil is a clear and unambiguous expression of legislative intent. *See Hudson*, 118 S.Ct. at 495. And third, the authority to impose penalties for violations of the KOSH standards is placed in the Kentucky Occupational Safety and Health Commission, an administrative body. As the Court in *Hudson* stated, "[t]hat such authority was conferred upon administrative agencies is prima facie evidence that Congress intended to provide for a civil sanction (citations omitted)." *Hudson*, 118 S.Ct. at 495.

---

**3.** In fairness to the trial court, we must note that *Hudson* was rendered subsequent to the order now on appeal.

Having concluded that the General Assembly intended Chapter 338 to impose civil rather than criminal penalties, we turn to the second part of the analysis, i.e., whether the sanctions are so punitive as to render them quasi-criminal despite the legislature's intent to the contrary. This analysis involves the seven *Kennedy* factors.

As noted above, the *Kennedy* analysis examines the degree to which a penalty's effect may properly be regarded as criminal rather than civil. In applying *Kennedy* to the facts at bar, we cannot conclude that Chapter 338 may reasonably be characterized as "[t]ransform[ed from] what was clearly intended as a civil remedy into a criminal penalty." *Hudson,* 118 S.Ct. at 493, 494. While the imposition of a civil remedy (i.e., a fine) may properly be regarded as punitive, the clear purpose of Chapter 338 is to promote worker safety rather than achieve the goals commonly associated with criminal punishment. The record does not demonstrate that the statutory scheme at issue is so punitive in its application that it takes on the character of a criminal statute. As *Hudson* noted, ". ... 'only the clearest of proof' will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty. . . ." *Hudson,* 118 S.Ct. at 493, 494. The "clearest proof" is not present in the matter at bar, and as such we must conclude that Chapter 338 is properly regarded as a civil statute both in form and in application. Accordingly, the imposition of penalties thereunder does not bring about Fifth Amendment protection from subsequent criminal prosecution.

For the foregoing reasons, the order dismissing the indictment is vacated and the matter is remanded for proceedings consistent with this opinion.

EMBERTON, Judge, concurs.

SCHRODER, Judge, dissents.