IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CAESAR K. COOPER, | § | |
| | § | No. 95, 2021 |
| Appellant Below-<br>Appellant, | § | |
| | § | Court Below—Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | C.A. No. N19A-12-011 |
| DELAWARE BOARD OF<br>NURSING, | § | |
| | § | |
| | § | |
| Appellee Below-<br>Appellee. | § | |
| | § | |

Submitted: August 6, 2021
Decided: October 21, 2021

Before **VALIHURA**, **VAUGHN**, and **TRAYNOR**, Justices.

## <u>ORDER</u>

Upon consideration of the parties' briefs and the record below, it appears to the Court that:

(1) The appellant, Caesar K. Cooper, filed this appeal from the Superior Court's March 12, 2018 order affirming the decision of Delaware Board of Nursing ("the Board") to reprimand Cooper.[1] We find no merit to the appeal and, therefore, affirm the Superior Court's judgment.

(2) Mr. Cooper is a licensed registered nurse. In 2017, he was employed

---

[1] *Cooper v. Del. Bd. of Nursing*, 2021 WL 754306 (Del. Super. Ct. Feb. 26, 2021).

by Cadia Healthcare in Wilmington. During a night shift on November 15, 2017, Cooper and a certified nursing assistant ("the CNA") provided treatment to a patient ("the Patient"). The treatment required the turning of the Patient. The protocol for turning an obese person like the Patient included the nurse directing the CNA where to stand, indicating how the turn would be accomplished, and performing a 1-2-3 count so that the nurse and CNA were moving in synchronicity to safely turn the patient. Mr. Cooper did not direct the CNA where to stand, indicate how the turn would be accomplished, or perform the count. As Mr. Cooper turned the Patient, the Patient cried out, and asked why Mr. Cooper was being so rough.

(3) The Patient subsequently complained to Cadia about how Mr. Cooper had treated him. Cadia suspended and then terminated Mr. Cooper. Cadia also reported Mr. Cooper to the Delaware Division of Long Term Care Residents Protection ("DLTCRP"), which investigated the report, held a hearing, and placed Mr. Cooper on the Adult Abuse Registry. The Superior Court dismissed Mr. Cooper's untimely appeal of the DLTCRP's decision.

(4) On March 4, 2019, the State filed a disciplinary complaint against Mr. Cooper with the Delaware Board of Nursing. The complaint alleged that Mr. Cooper had violated 24 *Del. C.* § 1922(a)(8) by violating Board Regulations 10.4.1 (failing to conform to legal and accepted standards of the nursing profession), 10.4.2.5 (committing or threatening violence, verbal, or physical abuse of a patient),

2

and 10.4.2.14 (failing to take appropriate action to safeguard a patient from incompetent, unethical, or illegal health care practice).[2]

(5) On September 5, 2019, a hearing officer conducted an evidentiary hearing. A Division of Professional Regulations ("DPR") investigator, the CNA, and Mr. Cooper testified. The State and Mr. Cooper also submitted documents and photographs. On October 9, 2019, the hearing officer issued a report with her recommendations. She found that Mr. Cooper had violated Regulations 10.4.1, 10.4.2.5, and 10.4.2.14 by failing to comply with the standard practice for turning an obese patient and causing the Patient to suffer emotional and physical harm (a blood clot and hematoma). The hearing officer recommended issuance of a letter of reprimand to Mr. Cooper, placement of Mr. Cooper's license on probation for two years, and that Mr. Cooper complete nine continuing education hours.

(6) After the parties submitted exceptions to the hearing officer's recommendations and attended a meeting of the Board, the Board voted to amend the hearing officer's recommended conclusions of law and discipline. The Board rejected the hearing officer's conclusions of law that Mr. Cooper had violated Regulations 10.4.2.5, and 10.4.2.14 because there was insufficient evidence that the Patient suffered physical injuries as a result of Mr. Cooper's actions. The Board

---

[2] This was the numbering in effect in 2017. These regulations are now numbered 10.1.1, 10.1.2.5, and 10.1.2.14. We will refer to the regulations by the old numbering.

3

reduced Mr. Cooper's discipline to a letter of reprimand for failing to competently turn the Patient and completion of nine continuing education contact hours. On December 19, 2019, the Board issued a written order containing its conclusions.

(7) Mr. Cooper appealed the Board's order to the Superior Court. After briefing by the parties, the Superior Court entered an order affirming the Board's judgment. The Superior Court held there was substantial evidence to support the Board's decision, Mr. Cooper was not denied due process, and the Board did not abuse its discretion. This appeal followed.

(8) "When 'review[ing] a Superior Court ruling that, in turn, . . . reviewed the ruling of an administrative agency,' this Court examines the agency's decision directly."[3] Like the Superior Court, we review whether the agency's decision is supported by substantial evidence and is free from legal error.[4] Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.[5] It is more than a "scintilla but less than a preponderance of the evidence."[6] We do not weigh the evidence, determine questions of credibility, or make our own factual findings.[7]

(9) As he did below, Mr. Cooper argues that there was not substantial

[3] *Del. Solid Waste Auth. v. Del. Dep't of Nat. Res. & Envtl. Control*, 250 A.3d 94, 105 (Del. 2021).
[4] *Id.*
[5] *Oceanport Indus., Inc. v. Wilmington Stevedores, Inc.*, 636 A.2d 892, 899 (Del. 1994).
[6] *Noel-Liszkiewicz v. La-Z-Boy*, 68 A.3d 188, 191 (Del. 2013).
[7] *Del. Bd. of Med. Licensure & Discipline v. Grossinger*, 224 A.3d 939, 959 (Del. 2020).

evidence to support the Board's decision that he violated Regulation 10.4.1. Regulation 10.4.1 defines unprofessional conduct as "[n]urses whose behavior fails to conform to legal and accepted standards of the nursing profession and who thus may adversely affect the health and welfare of the public may be found guilty of unprofessional conduct."[8] This Regulation does not require proof of actual harm to a patient.[9]

(10)  Contrary to Mr. Cooper's contentions, the standard of the nursing profession for turning an obese patient was established during the Board proceedings.  At the evidentiary hearing, both Mr. Cooper and CNA agreed that the standard for turning an obese patient included the nurse directing the CNA where to stand, indicating how the turn would be done, and performing a count.  Mr. Cooper's defense was that he complied with this standard, not that there was a different standard or no standard at all.

(11)  Second, there was substantial evidence that Mr. Cooper failed to comply with the standard and thus violated Regulation 10.4.1.  The evidence included: (i) Mr. Cooper and the CNA's agreement on the standard for turning an obese patient; (ii) the CNA's testimony that Mr. Cooper did not communicate with her or the Patient, direct her where to stand, indicate how the turn would be

---

[8] 24 *Del. Admin. C.* § 1900-10.4.1.
[9] *Del. Bd. of Nursing v. Francis*, 195 A.3d 467, 475-76 (Del. 2018).

accomplished, or do the count; and (iii) the CNA's testimony that the Patient cried out in pain when Mr. Cooper turned him, and asked why Mr. Cooper was being so rough. Relying on his own testimony and interpretation of the CNA's testimony, Mr. Cooper argues that he complied with the standard for turning an obese patient. It was within the hearing officer's discretion to determine the credibility of witnesses and resolve conflicts in the testimony.[10] The hearing officer found the CNA more credible than Mr. Cooper concerning the incident with the Patient. We do not make credibility assessments on appeal, and we will not substitute our judgment for the hearing officer's credibility findings.[11]

(12) Mr. Cooper next argues that the hearing officer and Board violated his right to due process by relying on the CNA's false testimony, the DLTRCP decision, and out-of-court statements of the Patient and the former Cadia assistant director of nursing ("ADON") who reported him to DLTRCP. He also contends that the State withheld evidence from him and that the former Cadia ADON should have testified at the hearing. These arguments are without merit.

(13) The CNA's testimony that she independently decided to position herself where she usually stood and perform a count herself does not make her testimony that Mr. Cooper failed to comply with the protocol false as Mr. Cooper

---

[10] *Fieni v. Catholic Health East*, 2014 WL 7042778, at *1 (Del. Dec. 11, 2014).
[11] *Grossinger*, 224 A.3d at 961.

contends. Mr. Cooper and CNA agreed that the protocol was for him to direct her where to stand and to perform the count, not for her to do those things by herself without any direction or participation by him. As to the DLTRCP proceedings, the hearing officer referred to those proceedings in her recommendation, but did not base her conclusions upon Mr. Cooper's placement on the Adult Abuse Registry. Mr. Cooper asserts that his placement on the Adult Abuse Registry by DLTRCP and discipline by the Board violates double jeopardy principles, but cites no authority in support of this proposition.[12]

(14) Turning to the out-of-court statements of the Patient and the former Cadia ADON, Mr. Cooper did not object to these statements at the hearing. Moreover, "hearsay evidence is permissible in administrative hearings, so long as that evidence is not the sole basis for the hearing officer's decision."[13] The hearing officer's decision did not rest solely on the out-of-court statements of the Patient and former Cadia ADON. Among other things, the hearing officer relied on the testimony of the CNA, who was present at the time of the incident with the Patient and testified at the hearing. Mr. Cooper also argues that the State failed to establish a foundation for admission of the statements under 11 *Del. C.* § 3507, but this statute

---

[12] Double jeopardy principles apply "to those situations in the which the injury complained of constitutes an imposition or exaction of a 'criminal' rather than a 'civil' nature." *Myrie v. Comm'r, N.J. Dep't of Corr.*, 267 F.3d 251, 255 (3d Cir. 2001) (citing *Rex Trailer Co. v. United States*, 350 U.S. 148, 154 (1963)).

[13] *Husbands v. Del. Dep't of Educ.*, 2020 WL 1814045, at *3 (Del. Apr. 7, 2020).

applies to the admission of certain statements in criminal prosecutions, not civil proceedings.[14]

(15) Mr. Cooper claims that the State violated *Brady v. Maryland*[15] by withholding the Patient's statement and the investigator's report from him, but *Brady* requires the State to produce evidence favorable to the defense in criminal prosecutions.[16] This was not a criminal prosecution. In addition, Mr. Cooper did not request any discovery and did not object to the State submitting, and then withdrawing, the investigator's summary of her interview with the Patient at the hearing.[17] As to Mr. Cooper's claim that the former Cadia ADON was a material witness who should have testified at the evidentiary hearing, there is no indication that he sought to obtain or compel her presence at the hearing. Mr. Cooper further contends that her testimony was necessary for the State to prove the Patient suffered bruising as a result of his actions, but ignores that the Board in fact found there was insufficient evidence to show what caused the Patient's bruising and rejected the hearing officer's conclusion that Mr. Cooper violated 10.4.2.5 and 10.4.2.14.

(16) Finally, Mr. Cooper argues that the Board acted arbitrarily and

---

[14] *Baker v. State*, 213 A.3d 1187, 1191 (Del. 2019).

[15] *Brady v. Maryland*, 373 U.S. 83 (1983). Mr. Cooper does not explain how these materials would be favorable to him.

[16] *See, e.g., Dawson v. State*, 673 A.2d 1186, 1193 (Del. 1996) (describing the applicability of *Brady* to criminal cases).

[17] The State withdrew the summary after realizing it contained confidential and personal identifying information.

capriciously in reaching its decision.  He again claims that no standard of nursing was established, but again ignores that he and the CNA agreed on the standard for turning an obese patient.  He also contends that the Board's rejection of the hearing officer's conclusion that he caused the Patient's injury means he could not have violated Regulation 10.4.1.  This Court has previously held that a violation of Regulation 10.4.1 does not require harm to a patient, ruling that the Board could "rightfully conclude[] that a nurse who engages in standard-breaching behavior is, for that very reason, a nurse who 'may adversely affect the health and welfare of the public,' regardless of whether the nurse's unprofessional behavior in fact caused specific harm to the patient."[18]

(17)  As to Mr. Cooper's claim that the Board's amendment of the hearing officer's recommendation was an "unfair surprise" and therefore an abuse of discretion,[19] he is mistaken.  After a hearing, the hearing officer submitted recommendations to the Board that Mr. Cooper violated Regulation 10.4.1 by failing to turn the Patient in accordance with the routine practice and should be disciplined.[20]  Mr. Cooper submitted comments and arguments to the hearing

---

[18] *Francis*, 195 A.3d at 475 (quoting Regulation 10.4.1.).
[19] Opening Brief at 32.
[20] 29 *Del. C.* § 8735(v)(1)(d) ("Upon completion of such hearing or the taking of such testimony and evidence, the hearing officer shall submit to the board or commission findings and recommendations thereon.").

officer's recommendations.[21] As expressly authorized by § 8735(v)(1)(d), the Board modified the recommendations to eliminate the conclusions of law concerning Regulations 10.4.2.5 and 10.4..2.14 and to reduce the discipline imposed.[22] There was no unfair surprise or abuse of discretion in the Board's modification of the hearing officer's recommendations.

(18) Mr. Cooper also claims that the Board's decision was flawed because § 8735(v)(1)(d) required the Board to rely on the "written record," the "written record" includes the transcript of the Board's oral deliberations, and there was no such transcript. There is nothing in § 8735(v)(1)(d) to suggest that the Board had to obtain a written transcript of its deliberations before making its final decision.[23] Mr. Cooper has not shown that the Board acted arbitrarily and capriciously in reaching its decision.

---

[21] *Id.* ("When the proposed order is submitted to the board or commission, a copy shall be delivered to each of the other parties, who shall have 20 days to submit written exceptions, comments and arguments concerning the conclusions of law and recommended penalty.").

[22] *Id.* ("The board or commission shall make its final decision to affirm or modify the hearing officer's recommended conclusions of law and proposed sanctions based upon the written record.").

[23] In his reply brief, Mr. Cooper argues that the record on appeal to the Superior Court should have included a transcript of the Board's oral deliberations. We have not considered this argument as it was not fairly raised in Mr. Cooper's opening brief. Supr. Ct. R. 14(b)(vi)(A)(3) ("The merits of any argument that is not raised in the body of the opening brief shall be deemed waived and will not be considered by the Court on appeal."); Supr. Ct. R. 14(c)(i) ("Appellant shall not reserve material for reply brief which should have been included in a full and fair opening brief."); *Murphy v. State,* 632 A.2d 1150, 1152 (Del. 1993) (holding failure to raise a legal issue in the text of the opening brief generally constitutes a waiver of that claim on appeal).

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

/s/  James T. Vaughn, Jr.
Justice

11