COURT OF APPEALS OF VIRGINIA


Present:   Judges Kelsey, Petty and Senior Judge Clements
Argued by teleconference


CHARLES E. SETTLE, JR.
                                                                OPINION BY
v.         Record No. 1173-08-4                    JUDGE JEAN HARRISON CLEMENTS
                                                                MAY 11, 2010
COMMONWEALTH OF VIRGINIA


                     FROM THE CIRCUIT COURT OF FAUQUIER COUNTY
                             Herman A. Whisenant, Jr., Judge Designate

                   Gilbert K. Davis (Davis & Associates, LLC, on briefs), for
                   appellant.

                   Alice T. Armstrong, Assistant Attorney General II (William C.
                   Mims, Attorney General, on briefs), for appellee.


       This case returns to us from the Virginia Supreme Court.  By unpublished order, after

"[h]aving reviewed the record, briefs, and relevant statutes in the case," the Supreme Court "is of

the opinion that it does not have jurisdiction over the portion of the appeal that was transferred

by the Court of Appeals." Settle v. Commonwealth, No. 100520 (Va. Apr. 7, 2010).  The

Supreme Court thus transferred the case back to this Court pursuant to Code § 8.01-677.1.

       In Settle v. Commonwealth, 55 Va. App. 212, 221, 685 S.E.2d 182, 186 (2009) (Settle I),

we concluded Code § 3.1-796.115 "is civil in nature" and that, accordingly, this Court did not

have jurisdiction over the portion of Settle's appeal that challenged the forfeiture of his dogs

pursuant to that statute.[1]  Having now reviewed that challenge, we find it meritless.

_____
       [1] We recently concluded in Davis v. County of Fairfax, Record No. 1697-08-4 (Mar. 2,
2010), that we "lack[ed] authority to conduct an independent review of the issue of our
jurisdiction over" the case involving a civil forfeiture action under Code § 3.1-796.115, because
the Supreme Court of Virginia had transferred the case to this Court noting it "appear[ed]" it did
not have jurisdiction over the case.

Settle was convicted in a bench trial of two counts of inadequate care by owner of companion animals, pursuant to Code § 3.1-796.68, and one count of dog at large, pursuant to Fauquier County Code §§ 4-22 and 13-1. Pursuant to Code § 3.1-796.115,[2] all of the dogs at issue were seized from appellant's control and placed in the care of local animal shelters. In Settle I, Settle argued only that the trial court erred in finding the evidence sufficient to prove he was the person who neglected the dogs. We held "that the witnesses' testimony identifying 'Charles Settle' was sufficient to prove beyond a reasonable doubt that the defendant, who was sitting in court in the witnesses' presence, was the same person with whom the witnesses dealt on numerous occasions." Settle, 55 Va. App. at 227, 685 S.E.2d at 189. Having previously concluded the evidence was sufficient to identify Settle as the owner of the dogs in question, we likewise conclude the resulting forfeiture of the animals pursuant to Code § 3.1-796.115 was proper.

Accordingly, the decision of the trial court is affirmed.

Affirmed.

---

[2] After all proceedings below had been completed, Title 3.1 was repealed, revised, and reenacted as Title 3.2. See 2008 Va. Acts, ch. 860 (repealing Title 3.1 effective October 1, 2008); 2008 Va. Acts, ch. 510 (reenacting Code § 3.1-796.115, with amendments, as Code § 3.2-6569).

COURT OF APPEALS OF VIRGINIA


Present:   Judges Kelsey, Petty and Senior Judge Clements
Argued by teleconference


CHARLES E. SETTLE, JR.

                                                                OPINION BY
v.        Record No. 1173-08-4                    JUDGE JEAN HARRISON CLEMENTS
                                                            NOVEMBER 24, 2009
COMMONWEALTH OF VIRGINIA


                        FROM THE CIRCUIT COURT OF FAUQUIER COUNTY
                              Herman A. Whisenant, Jr., Judge Designate

                      Gilbert K. Davis (Davis & Associates, LLC, on briefs), for
                      appellant.

                      Alice T. Armstrong, Assistant Attorney General II (William C.
                      Mims, Attorney General, on briefs), for appellee.


        Charles E. Settle, Jr., (appellant) was convicted in a bench trial of two counts of inadequate

care by owner of companion animals, pursuant to Code § 3.1-796.68, and one count of dog at large,

pursuant to Fauquier County Code §§ 4-22 and 13-1.  Pursuant to Code § 3.1-796.115,[1] all of the

dogs at issue were seized from appellant's control and placed in the care of local animal shelters.

Additionally, the trial court declared three of the dogs dangerous pursuant to Code § 3.1-796.93:1.[2]

_____

        [1] After all proceedings below had been completed, Title 3.1 was repealed, revised, and
reenacted as Title 3.2.  See 2008 Va. Acts, ch. 860 (repealing Title 3.1 effective October 1,
2008); 2008 Va. Acts, ch. 510 (reenacting Code § 3.1-796.115, with amendments, as Code
§ 3.2-6569).

        [2] Effective October 1, 2008, Code § 3.1-796.93:1 was repealed and reenacted as Code
§ 3.2-6540.  See 2008 Va. Acts, ch. 860.
        While appellant's notice of appeal indicates he appeals from the trial court's declaration
that the dogs are dangerous, we do not reach this issue because it was not included in appellant's
questions presented.  See Rules 5A:12(c), 5A:20(c)-(e).

On appeal, appellant contends the trial court erred in finding the evidence sufficient to prove he was the person who neglected the dogs.

The Commonwealth filed a motion to dismiss the dog at large charge arguing that we do not have jurisdiction to hear the matter because appellant failed to join the County as an indispensable party. Following oral argument, we entered an order directing the parties to file supplemental briefs on the following question: Does this Court have jurisdiction over a civil forfeiture brought pursuant to Code § 3.1-796.115? For the following reasons, we (1) find we have no jurisdiction over appellant's appeal of the forfeiture of his dogs pursuant to Code § 3.1-796.115 and transfer it to the Supreme Court of Virginia; (2) dismiss appellant's appeal challenging his conviction for dog at large; and (3) affirm his convictions of inadequate care by owner of companion animals.

BACKGROUND

"When the sufficiency of the evidence is challenged on appeal, we review the evidence 'in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'" Emerson v. Commonwealth, 43 Va. App. 263, 276, 597 S.E.2d 242, 249 (2004) (quoting Bright v. Commonwealth, 4 Va. App. 248, 250, 356 S.E.2d 443, 444 (1987)). "We will affirm the conviction 'unless it is plainly wrong or without evidence to support it.'" Dunaway v. Commonwealth, 52 Va. App. 281, 299, 663 S.E.2d 117, 126 (2008) (quoting Shackleford v. Commonwealth, 262 Va. 196, 209, 547 S.E.2d 899, 906 (2001)).

So viewed, the evidence established that over the course of approximately one year, Fauquier County sheriff's officers were dispatched to appellant's home on numerous occasions in response to animal noise, and safety and health complaints from appellant's neighbors. On December 31, 2007, after examining the living quarters and health of appellant's dogs, Hillary

Bogley, the Fauquier County humane investigator, and Deputy C.L. Phillipe,[3] an animal control officer, seized all of appellant's dogs and placed them in the care of local animal shelters.

All criminal summons and the civil petition for forfeiture were consolidated in the general district court. Following adverse rulings there, appellant appealed to the circuit court and a trial *de novo* was held on April 4, 2008. At trial, four Fauquier County sheriff's officers and the county humane officer testified about their interactions with appellant and his dogs.

Deputy Chad Brubaker confirmed in his testimony that on November 30, 2007, he was "dispatched to Mr. Settle's house." Brubaker explained where Settle's residence is located. Throughout his testimony he referred to acts and statements made by "Mr. Settle." Brubaker indicated he had been to the residence on several previous occasions and was familiar with the property. Deputy John Arseno testified he was "familiar with Mr. Settle," and had been to Settle's residence "numerous times." Arseno described being present at the residence on an occasion when "Mr. Settle and his mother were in an argument[.]" Arseno explained he talked to "Mr. Settle" each time he was at the house and talked to Settle about the reasons he had been called to the property. Deputy Rebecca Cooper testified she knew "Mr. Settle" and was familiar with where he lives. Cooper had also been to the property to investigate neighbor complaints concerning Settle's dogs on previous occasions. Deputy Phillipe also indicated he was "familiar with Mr. Settle," had been to Settle's residence numerous times, and spoke to Settle about the various complaints of neighbors concerning the dogs. Humane investigator Bogley confirmed she "came into contact with Mr. Settle" on December 31, 2007 at his residence when she seized his animals and removed them from his care.

---

[3] The deputy's name is spelled "Felippe" in the transcript. It is spelled "Phillipe" in other documents in the record. We will use the latter spelling in this opinion.

The various witnesses gave descriptions of appellant's behavior as well as the living conditions of the animals.

Appellant moved to strike at the close of the Commonwealth's evidence, and again at the close of all evidence. The court denied both motions and convicted appellant of one count of dog at large and two counts of inadequate care of companion animals. Three of the dogs were deemed dangerous pursuant to Code § 3.1-796.93:1, and all of the dogs were placed in an animal shelter. This appeal followed.

ANALYSIS

I.

We first address the issue of the forfeiture of the dogs.

It is well established that the "Court of Appeals of Virginia is a court of limited jurisdiction. Unless a statute confers jurisdiction in this Court, we are without power to review an appeal." Canova Elec. Contracting, Inc. v. LMI Ins. Co., 22 Va. App. 595, 599, 471 S.E.2d 827, 829 (1996) (citation omitted).

> Code § 17.1-406(A) provides that "[a]ny aggrieved party may present a petition for appeal to the Court of Appeals from . . . any final conviction in a circuit court of . . . a crime." The statutory language is restrictive, limiting the Court of Appeals' appellate jurisdiction to appeals from final criminal convictions and from action on motions filed and disposed of while the trial court retains jurisdiction over the case.

Commonwealth v. Southerly, 262 Va. 294, 299, 551 S.E.2d 650, 653 (2001).

In construing forfeiture proceedings under Code §§ 19.2-386.1 through 19.2-386.14, we have held:

> Forfeiture is, however, not a criminal proceeding but a "civil" action against "*res*" unlawfully employed by its owner or other person. Although related to criminal activity, forfeiture is neither "penalty" nor "punishment" for an offense and remains entirely separate and distinct from a prosecution of its owner or other individual.

- 4 -

Jenkins v. Commonwealth, 13 Va. App. 420, 422, 411 S.E.2d 841, 842 (1991) (quoting

Commonwealth v. Lincoln Automobile, 212 Va. 597, 599-600, 186 S.E.2d 279, 281 (1972))

(footnote omitted).  Furthermore, "this Court has only limited jurisdiction in civil matters and . . .

statutory forfeiture procedures provide for appellate review only in the Supreme Court of

Virginia."  Id. at 423, 411 S.E.2d at 842.

In this case, Code § 3.1-796.115 allows humane investigators, law-enforcement officers, and

animal control officers to seize or impound "any animal that has been abandoned, has been cruelly

treated, or is suffering from an apparent violation of this chapter that has rendered the animal in

such a condition as to constitute a direct and immediate threat to its life, safety or health."  The

general district court is required to hold a hearing.  Additionally:

> The humane investigator, law-enforcement officer, or animal
> control officer shall provide for such animal until the court has
> concluded the hearing.  Any locality may, by ordinance, require
> the owner of any animal held pursuant to this subsection for more
> than thirty days to post a bond in surety with the locality for the
> amount of the cost of boarding the animal for a period of time set
> in the ordinance, not to exceed nine months.
>
> In any locality that has not adopted such an ordinance, a court
> may order the owner of an animal held pursuant to this subsection
> for more than 30 days to post a bond in surety with the locality for
> the amount of the cost of boarding the animal for a period of time
> not to exceed nine months.  The bond shall not be forfeited if the
> owner is found to be not guilty of the violation.
>
> If the court determines that the animal has been neither
> abandoned, cruelly treated, nor deprived of adequate care, the
> animal shall be returned to the owner.  If the court determines that
> the animal has been (i) abandoned or cruelly treated, (ii) deprived
> of adequate care, as that term is defined in § 3.1-796.66, or
> (iii) raised as a dog that has been, is, or is intended to be used in
> dogfighting in violation of § 3.1-796.124, then the court shall order
> that the animal be: (a) sold by a local governing body;
> (b) humanely destroyed, or disposed of by sale or gift to a federal
> agency, state-supported institution, agency of the Commonwealth,
> agency of another state, or a licensed federal dealer having its
> principal place of business located within the Commonwealth;
> (c) delivered to any local humane society or shelter, or to any

person who is a resident of the county or city where the animal is seized or an adjacent county or city in the Commonwealth and who will pay the required license fee, if any, on such animal; or
(d) delivered to the person with a right of property in the animal as provided in subsection E.

Code § 3.1-796.115(D).

Thus, while an animal can only be forfeited upon a finding by the court of criminal conduct, no criminal conviction is required.

> Naturally, if the underlying charge is civil in nature, the appeal is also civil in nature. This is not to say that if the underlying charge is criminal in nature, the appeal is automatically criminal in nature. If we were to follow that rationale, we would have to ignore our previous characterization of petitions for habeas corpus and appeals from judgments on habeas petitions as civil in nature. Criminal charges underlie the great bulk of habeas cases, and we are unaware of any disagreement with the proposition that petitions for habeas corpus and appeals from orders in habeas cases are civil in nature.

Southerly, 262 Va. at 298-99, 551 S.E.2d at 652.

To determine whether a particular sanction is civil or criminal:

> "A court must first ask whether the legislature, 'in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or another.' [United States v. Ward, 448 U.S. 242, 248 (1980)]. Even in those cases where the legislature 'has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive in purpose or effect,' id. at 248-49, as to 'transform what was clearly intended as a civil remedy into a criminal penalty,' Rex Trailer Co. v. United States, 350 U.S. 148, 154 (1956)."

Depsky v. Commonwealth, 50 Va. App. 454, 460-61, 650 S.E.2d 867, 871 (2007) (quoting

Hudson v. United States, 522 U.S. 93, 99 (1997)).

The Hudson Court provided the following "useful guideposts" for determining whether a civil sanction has been transformed into a criminal sanction:

> (1) "whether the sanction involves an affirmative disability or restraint"; (2) "whether it has historically been regarded as a punishment"; (3) "whether it comes into play only on a finding of

*scienter*"; (4) "whether its operation will promote the traditional aims of punishment — retribution or deterrence"; (5) "whether the behavior to which it applies is already a crime"; (6) "whether an alternative purpose to which it may rationally be connected is assignable for it"; and (7) "whether it appears excessive in relation to the alternative purpose assigned."

Hudson, 522 U.S. at 99-100 (quoting Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-69 (1963)). "As the Court emphasized, however, 'these factors must be considered in relation to the statute on its face, and only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty.'" Dorsey v. Commonwealth, 32 Va. App. 154, 162, 526 S.E.2d 787, 791 (2000) (quoting Hudson, 522 U.S. at 100).

Code § 3.1-796.115 does not define a crime or prescribe a penalty therefore. Code § 3.1-796.115 merely sets out the administrative process by which an animal warden or officer may seize an animal alleged to have been abused or neglected and provide for its care until the propriety of the seizure is resolved. The statute is civil in nature.

The language of Code § 3.1-796.115(C) providing that "[t]he procedure for appeal and trial shall be the same as provided by law for misdemeanors" and requiring application of the traditionally criminal standard of proof "beyond a reasonable doubt" does not support a different result. The Virginia Supreme Court considered the meaning of almost identical language in another statute - added by the General Assembly to the predecessor of Code § 18.2-268.4, which addresses the procedure to be followed when a person arrested for driving while intoxicated refuses to permit the taking of blood or breath samples pursuant to Virginia's implied consent law. See Commonwealth v. Rafferty, 241 Va. 319, 321-22, 402 S.E.2d 17, 18-19 (1991) (decided under a local ordinance containing "essentially the same language" as the state refusal statute). Rejecting the defendant's argument that this language was intended to modify the

Court's prior ruling that the statute provided for a civil proceeding and to make refusal a criminal offense, the Court reasoned:

> If the General Assembly intended to [make refusal a criminal offense], the 1977 amendment simply could have provided that an unreasonable refusal to submit to [a blood or breath] test is a misdemeanor and not an administrative and civil proceeding. Additionally, *such an amendment would have given the right to a jury trial and required proof beyond a reasonable doubt, without the necessity of mentioning them, because both are inherent in criminal prosecutions*.

Id. at 322, 402 S.E.2d at 19 (emphasis added).

Similarly here, when the General Assembly added almost identical language to Code § 3.1-796.115(C) in 1993, see 1993 Va. Acts, ch. 119, it was on notice of the Court's determination that this language was not necessary in a criminal matter. See, e.g., Charles v. Commonwealth, 270 Va. 14, 19, 613 S.E.2d 432, 434 (2005) (recognizing the principle that the legislature is presumed to be aware of existing rules and case law when enacting legislation). Thus, by adding this language to Code § 3.1-796.115, the General Assembly implicitly recognized that the nature of the underlying proceeding in such animal seizure cases is civil rather than criminal.

We also conclude that the civil penalty at issue in this case is not "'so punitive in either purpose or effect,' [Ward, 448 U.S. at 249], as to 'transform what was clearly intended as a civil remedy into a criminal penalty,' Rex Trailer Co.[, 350 U.S. at 154]." Hudson, 522 U.S. at 99. Considering the Mendoza-Martinez factors listed above, we note that Code § 3.1-796.115 does not require a finding of scienter and that the behavior at issue is clearly proscribed as a crime under a different statute, Code § 3.1-796.122. Further, as quoted above, although the owner of an animal found to be abandoned, abused, or neglected "shall be required" to pay for the animal's care, if the animal is sold, any proceeds from the sale remaining after expenses for the sale and care have been paid are to be returned to the animal's owner. See Code

§ 3.1-796.115(F). Thus, we conclude the animal seizure statute is not so punitive in effect as to transform the civil remedy into a criminal penalty.

We acknowledge that in a similar case, Davis v. Fairfax County, Record No. 081825 (Va. Oct. 29, 2008), the Supreme Court of Virginia transferred that case to this Court, stating only:

> It appears that this Court does not have jurisdiction over this case. Code § 3.1-796.115(C). Accordingly, the appellee's motion is granted and the case hereby is transferred to the Court of Appeals of Virginia pursuant to Code § 8.01-677.1.

In Sheets v. Castle, 263 Va. 407, 559 S.E.2d 616 (2002), the Supreme Court of Virginia stated:

> With the exception of cases with procedural defects and the limited number of cases for which appellate review by the Supreme Court of Virginia is dependent upon "a substantial constitutional question as a determinative issue or matters of significant precedential value" (Code §§ 17.1-410 and -411), *the refusal of a petition for appeal constitutes a decision on the merits.*

Id. at 411, 559 S.E.2d at 619 (emphasis added).

Additionally, "[w]hile a decision 'on the merits,' including a denial of a petition for appeal, may have precedential value, discerning the grounds that formed the basis for denial is indispensable in assessing its potential applicability in future cases." Id. at 411-12, 559 S.E.2d at 619. "However, unless the grounds upon which the refusal is based are discernible from the four corners of the Court's order, the denial carries no precedential value." Id. at 412, 559 S.E.2d at 619.

We conclude that the grounds upon which the Davis transfer is based are not discernible from the four corners of the order. The order merely states that it "appears" the Supreme Court does not have jurisdiction but provides no rationale or explanation of its decision to transfer the case. Therefore, we find our decision here is not controlled by Davis.

Accordingly, we hold that we have no jurisdiction over this portion of the appeal and transfer it to the Supreme Court of Virginia. See Southerly, 262 Va. at 299, 551 S.E.2d at 653

- 9 -

(ruling that "[u]nder Code § 8.01-677.1, if an appeal is otherwise proper and timely but the appellate court in which it is filed rules it should have been filed in the other appellate court, the court so ruling shall transfer the appeal to the other court").

## II.

On November 30, 2007 Deputy Brubaker issued appellant a summons for "dog at large" in violation of Fauquier County Code §§ 4-22 and 13-1. Following trial, appellant was convicted of the offense and the trial court's April 9, 2008 final order mistakenly indicated appellant had been convicted of violating Code § 3.1-796.128. On August 13, 2009, the trial court entered an order *nunc pro tunc* to April 9, 2008, correcting the final order to include only the County ordinance.

We dismiss that part of appellant's appeal challenging the local misdemeanor conviction due to his failure to perfect an appeal as to that conviction. For such an appeal, appellant was required to name Fauquier County in the notice of appeal because the County, as the prosecuting authority on the local misdemeanor charge, was an indispensable party. Woody v. Commonwealth, 53 Va. App. 188, 196-200, 670 S.E.2d 39, 43-45 (2008) (holding that Amherst County was an indispensable party in an appeal challenging convictions under both state law and the Amherst County Code, thus requiring that the County be named as a party in appellant's notice of appeal in order to perfect an appeal on the local law conviction). Appellant, however, did not name Fauquier County as a party in either the notice of appeal or the accompanying certificate of service, instead naming only the Commonwealth of Virginia. "[T]he failure to join an indispensable party is a jurisdictional defect that requires dismissal of the appeal." Id. at 199, 670 S.E.2d at 45. Accordingly, we dismiss the portion of this appeal challenging appellant's conviction for dog at large. See Ghameshlouy v. Commonwealth, 54 Va. App. 47, 675 S.E.2d 854 (2009), appeal granted, No. 091120 (Va. Sept. 11, 2009).

- 10 -

III.

Appellant asserts the evidence was insufficient to support his convictions because none of the witnesses identified him in court as the person they dealt with during their investigations.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). "In every criminal prosecution the Commonwealth must establish beyond a reasonable doubt all elements of the offense and that the accused did commit it." Harward v. Commonwealth, 5 Va. App. 468, 470, 364 S.E.2d 511, 512 (1988). The identity of the perpetrator is "an essential element of the offenses," Woodfin v. Commonwealth, 236 Va. 89, 95, 372 S.E.2d 377, 381 (1988); thus, "the Commonwealth must prove that fact beyond a reasonable doubt," Crawley v. Commonwealth, 29 Va. App. 372, 378, 512 S.E.2d 169, 172 (1999). "It is 'within the province of the [fact finder] to determine what inferences are to be drawn from proved facts, provided the inferences are reasonably related to those facts.'" Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003) (quoting Inge v. Commonwealth, 217 Va. 360, 366, 228 S.E.2d 563, 567-68 (1976)). "'The judgment of a trial court sitting without a jury is entitled to the same weight as a jury verdict and will not be set aside unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it.'" Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App. 438, 443 358 S.E.2d 415, 418 (1987)).

In Sheffey v. Commonwealth, 213 Va. 602, 194 S.E.2d 897 (1973), Sheffey was charged with possession of a controlled substance. Prior to the commencement of trial, the trial judge stated that John Henry Sheffey appeared in court in the custody of the jailer. He then introduced Sheffey to the jury. Sheffey did not dispute his identity as the person who was charged with possession of a controlled substance at that time. While testifying, the arresting officer repeatedly called Sheffey

"defendant" or "Sheffey," but did not "point his finger at defendant Sheffey and say he was the person he arrested in Alexandria on May 19, 1971." Id. at 603, 194 S.E.2d at 898. The Supreme Court concluded that "it [was] clear from [the officer's testimony] that the John Henry Sheffey then on trial was that identical person." Id. at 604, 194 S.E.2d at 899.

In this case, at the beginning of trial, when asked by the trial court if a certain witness was a defense witness, appellant himself specifically responded, "[h]e's my witness." Like the defendant in Sheffey, at no time during the presentation of the evidence did appellant raise any question that the individual charged with the crimes was not the person sitting at counsel table.

Moreover, in Sheffey, only one witness was responsible for identifying Sheffey. Here, however, multiple witnesses had ongoing interactions with appellant at his home. The witnesses were familiar with both appellant and his dogs. During the course of testimony, four sheriff's officers and Bogley repeatedly acknowledged their interactions with "Settle," and one of the witnesses referred to speaking with "Charles Settle" after receiving a complaint that several of Settle's dogs were running loose in the neighborhood. In its ruling, the trial court stated

> I don't think there's any question, as the Commonwealth had indicated, that indeed, during the time he asked the officers who went out to the place did they know you, they said they did. They'd been out there before.
>
> Each time they did look at you and make a head nodding that, indeed, you were the individual. I think that is certainly sufficient identification in this courtroom today.
>
> Obviously, the record would have a hard time showing that because they didn't point to you, and [c]ounsel didn't ask me to let the record reflect they had identified those witnesses, but indeed, I feel that is appropriate what they did as far as going forward today in reference to the issue that was raised by [c]ounsel that there was no proper identification.
>
> The record will show certainly they were asked if they knew you. They were asked if they'd been to your place before. They were asked several questions. And what the record won't

- 12 -

> show, which the Court saw, was the fact that they looked at you and certainly nodded their head toward you.
>
> So I think that has been addressed. They have properly identified you for the purpose of this hearing here today.

We have previously stated, "[t]he trial judge who views the witnesses as their testimony is given is in the better position to evaluate the evidence than an appellate court which reviews only a cold record." Harris v. Woodrum, 3 Va. App. 428, 433, 350 S.E.2d 667, 670 (1986). We will not second-guess the trial judge's conclusion that appellant was identified through non-verbal nods and acknowledging glances by the Commonwealth's multiple witnesses as the person with whom those witnesses interacted multiple times over the course of one year. We hold that the witnesses' testimony identifying "Charles Settle" was sufficient to prove beyond a reasonable doubt that the defendant, who was sitting in court in the witnesses' presence, was the same person with whom the witnesses dealt on numerous occasions.

For the foregoing reasons, we transfer in part, dismiss in part, and affirm in part the trial court's judgment.

Transferred in part to the Supreme Court of Virginia, dismissed in part, and affirmed in part.