# CIRCUIT COURT OF FAIRFAX COUNTY

Commonwealth of Virginia

v.

Scott Shafer

September 28, 2015

Case No. MI-2015-792

By Judge Jan L. Brodie

This Court heard argument on Defendant's Motion To Suppress on September 18, 2015. This matter comes before the Court involving Va. Code § 3.2-6540, titled "Control of Dangerous Dog; penalties." Two preliminary questions were presented during the hearing on Defendant's Motion prior to the Court's addressing the merits of the claim: first, whether the exclusionary rule applies to matters involving Va. Code § 3.2-6540(B); and, second, whether an out-of-court identification of a dog should be suppressed. For the reasons set forth below and based on these preliminary questions, Defendant's Motion To Suppress is denied without reaching the merits of the case.

## I. *Factual Background*

This matter arises out of a dog bite incident that occurred on or about December 29, 2014, in the County of Fairfax. The Commonwealth alleges the facts as follows. Two boxers ran out the front door of Defendant's residence, 4111 Meadow Hill Lane, Fairfax, Virginia. The door was opened by Defendant's father. The canines ran down the street and knocked over the victim, Mohammad Shah. The canines proceeded to attack and bite the victim on his face, hand, and leg. The victim was then transported to the hospital by ambulance and received eighteen stitches, as well as treatment for three fractured ribs. The victim stated that both animals bit him while he was on the ground, but it was a black boxer, named "Guinness," that knocked down the victim and bit him on his face and hand. Defendant *Scott Shafer* is the owner of Guinness. After the incident, two Animal Control

Officers, Officer Parker and Sgt. Pitts, arrived on the scene to question the witnesses, including Defendant's father, and seized the canines. Based on these aforementioned events, this dangerous dog proceeding determining the status of the dog Guinness now comes before the Court under Va. Code § 3.2-6540(B). This Motion concerns Defendant's request to suppress evidence that may be heard at that proceeding.

## II. Argument

Pursuant to the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, Article I, Section 10, of the Virginia Constitution, and Va. Code §§ 19.2-266.2 and 19.2-59, the Defendant seeks to suppress evidence obtained through a warrantless and unlawful entry into Defendant's home, an unlawful seizure of Defendant, an unlawful custodial interrogation of Defendant, and an unreliable and unlawful identification of the canine. Prior to addressing the merits of those claims, the Defendant recognized two preliminary matters at the hearing held on September 18, 2015. The first threshold matter concerned whether or not the exclusionary rule should even apply in the case at bar. The Defendant asserted that the rule was indeed applicable.

Although Defendant eventually conceded that a proceeding brought under Va. Code § 3.2-6540(B) is a civil proceeding, which generally bars application of a the exclusionary rule that is usually found in a criminal context, Defendant drew a parallel to a 1965 decision, *One 1958 Plymouth Sedan v. Pennsylvania*, involving a civil forfeiture proceeding of a car where the exclusionary rule was applied. 380 U.S. 693, 702, 85 S. Ct. 1246, 14 L. Ed. 2d 170 (1965). Using *Plymouth* as a basis, Defendant claimed he is in jeopardy of losing property rights when subject to a proceeding under Va. Code § 3.2-6540(B), because the proceeding can lead to limitations on ownership of the canine. For this reason, the Defendant argued dangerous dog proceedings are equivalent to that of the civil forfeiture in *Plymouth* and deserving of the protections afforded by the exclusionary rule because penalties, in the form of restriction of ownership, are present. Defendant also pointed to the title of the statute in question, which includes the word "penalties." Va. Code Ann. § 3.2-6540.

The second matter preliminarily broached by the Defendant involved an out of court identification of the canine at issue. Unlike the identification of inanimate objects, the Defendant argued the identification of a canine is that of an animate object subject to identification like a human. Defendant claimed, unlike a car or weapon, dogs are identified by their breed, color, and other characteristics. Because the dog is the main object of this case, Defendant argued that a single photo is presumptively unreliable and unduly suggestive for out-of-court identification purposes. Defendant suggested that the use of a single photo was *per se* unduly suggestive because the Virginia Court of Appeals has "found the use of a single photo display to be one of

the most suggestive methods of identification." *Curtis v. Commonwealth*, 11 Va. App. 28, 31, 396 S.E.2d 386 (1990). Furthermore, because of the victim's alleged inability to view the dogs, Defendant contended there was a substantial likelihood of misidentification of the dog.

In response, the Commonwealth disagreed with Defendant's assertions, except for the concession that the dangerous dog proceeding is civil in nature and thus not subject to application of the exclusionary rule. The Commonwealth noted three cases where the exclusionary rule was found inapplicable. *See INS v. Lopez-Mendoza*, 468 U.S. 1032, 1042, 104 S. Ct. 3479, 82 L. Ed. 2d 778 (1984); *United States v. Janis*, 428 U.S. 433, 460, 96 S. Ct. 3021, 49 L. Ed. 2d 1046 (1976); and *County of Henrico v. Ehlers*, 237 Va. 594, 604, 379 S.E.2d 457 (1989). Pointing to the primary purpose of the exclusionary rule, to deter unlawful police conduct and serve as a societal safeguard against Fourth Amendment violations, the Commonwealth noted a balancing test outlined in *Janis*. *See Janis*, 428 U.S. at 447-54. This test weighs the likelihood of deterrence resulting from the exclusion of evidence against the likelihood of the social costs imposed by exclusion. *Id.* Applying this test, the Court in *Janis* found that the exclusionary rule should not apply in a federal civil tax assessment proceeding. *Id.* at 454. Similarly, in *Lopez-Mendoza*, the Court found that the exclusionary rule should not be applied in federal civil deportation proceedings. *Lopez-Mendoza*, 468 U.S. at 1042. Virginia law echoes these principals outlined by the Supreme Court of the United States, and the Commonwealth noted that the Virginia Supreme Court declined to extend the exclusionary rule in a civil case involving an interpleader action. *See Ehlers*, 237 Va. at 603-604.

Applying the aforementioned case law, the Commonwealth argued that the exclusionary rule does not apply to the civil dangerous dog proceeding before the Court because the statute simply imposes a requirement of conditions of ownership and does not provide any possibility of criminal penalties. *See* Va. Code Ann. § 3.2-6540. The Commonwealth asserted that this characteristic of the statute, no threat of criminal penalties, distinguishes the proceeding from that of civil forfeiture proceedings where the exclusionary rule may apply. *See One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 85 S. Ct. 1246, 14 L. Ed. 2d 170 (1965).

Concerning the out-of-court identification, the Commonwealth argued that the constitutional protections applicable to a criminal defendant in a criminal prosecution, namely, due process, should not apply to the animal in a dangerous dog proceeding. The Commonwealth contended that there is a lack of case law on out-of-court identification of an animal because an animal is a piece of property that is not entitled to constitutional protections. Thus, the Commonwealth claimed there is no controlling authority which holds that the out-of-court identification of a piece of property, in this case a canine, must be suppressed if the identification was unduly suggestive. Because the dog is categorized as a piece of property, the Commonwealth

proffered that this is an issue that is more appropriate for trial and that the Court deny both the Defendant's Motions before reaching the merits.

## III. Analysis

### A. The Civil Nature of the Proceeding and Application of the Exclusionary Rule to Dangerous Dog Proceedings

In addressing whether or not the exclusionary rule applies to dangerous dog proceedings, the Court must first address a key threshold issue about the nature of the proceeding. The underlying question is whether or not a hearing identifying a canine as a dangerous dog, held pursuant to Va. Code § 3.2-6540(B), is civil in nature and not criminal.

Initially, based solely on the pleadings filed, it was unclear what position the Defendant took concerning this question. It was not until the day of the hearing, when the Defendant conceded that the proceedings were civil, that Defendant's position became apparent. Notably, this civil characterization of the proceeding was also asserted by the Commonwealth. This position is correct. However, due to the dearth of case law on the nature of dangerous dog proceedings, it is necessary to confirm this concession made by both parties to provide clarity and an explicative basis for determining the applicability of the exclusionary rule. The categorical determination between civil or criminal cases truly underpins the Defendant's first preliminary question about whether or not the exclusionary rule applies to Va. Code § 3.2-6540.

The proper categorization of the statutorily prescribed hearing influences whether or not the exclusionary rule may be applied, because the use of the exclusionary rule "should not be extended from criminal cases to civil cases." *County of Henrico v. Ehlers*, 237 Va. 594, 604, 379 S.E.2d 457 (1989). Based on a plain meaning textual analysis, the character of the penalties within the statute, as well as an understanding of the underlying purposes of the exclusionary rule, Va. Code § 3.2-6540(B) should be treated as a civil proceeding, which thus bars application of the exclusionary rule to the dangerous dog proceeding.

First, the plain language of the statute suggests the hearing is a civil proceeding and not criminal in nature. Virginia Code § 3.2-6540(B) outlines the requirements for appearing before a general district court to determine whether or not a canine is classified as a dangerous dog. Upon such a finding, the court orders the "animal's owner to comply with the provisions of this section." Va. Code Ann. § 3.2-6540(B). The court may also order the owner to "pay restitution for actual damages to any person injured by the animal," as well as order the owner to "pay all reasonable expenses incurred in caring and providing" for the animal while in custody if taken before the hearing. *Id.* The statute further prescribes "the procedure for appeal and trial shall be the same as provided by law for misdemeanors"

and that the "Commonwealth shall be required to prove its case beyond a reasonable doubt." *Id.* The remainder of the section details administrative requirements and fees for possessing a dangerous dog and articulates procedures for meeting said requirements. Va. Code § 3.2-6540(E), (F).

Ultimately, the statute makes no effort to characterize the proceeding of identifying a canine as a dangerous dog as criminal. Two words appear in the statute that may raise a criminal brow, the word "penalties" in the title, which was noted by the Defendant, and the use of "restitution for actual damages" in Va. Code § 3.2-6540(B), but the remainder of the language quarters the proceeding firmly in a civil category, because the statute fails to define a crime or state a criminal penalty. This analysis is further supported by Virginia case law.

In *Settle v. Commonwealth*, the Court of Appeals of Virginia determined a statute in an animal seizure case was civil rather than criminal and, thus, out of the limited jurisdiction of the court. 55 Va. App. 212, 222, 685 S.E.2d 182 (2009). In determining whether or not the sanction was civil or criminal, the court employed an in depth textual analysis of Va. Code § 3.1-796.115(C). *Id.* at 221. The language employed by the statute in question in *Settle*, "the procedure for appeal and trial shall be the same as provided by law for misdemeanors" and application of a "beyond a reasonable doubt" standard of proof is "almost identical" to the language of a blood and breath test refusal statute in *Commonwealth v. Rafferty*, upon which the *Settle* court hangs its hat. *Settle*, 55 Va. App. at 222. The Virginia Supreme Court in *Rafferty* classified the refusal statute as a civil proceeding, asserting that:

> If the General Assembly intended to [make refusal a criminal offense], the 1977 amendment simply could have provided that an unreasonable refusal to submit to [a blood or breath] test is a misdemeanor and not an administrative and civil proceeding. Additionally, such an amendment would have given the right to a jury trial and required proof beyond a reasonable doubt, *without the necessity of mentioning them, because both are inherent in criminal prosecutions.*

*Id.* (quoting *Rafferty*, 241 Va. at 322) (emphasis added). Ultimately, in both *Rafferty* and *Settle*, the two courts determined that the inclusion of language about the right to a jury trial and the standard of proof was not necessary for a criminal matter. Therefore, by adding the language to the statute, the General Assembly recognized the nature of the respective proceedings as civil rather than criminal. *Id.*

While the court in *Settle* was making a comparison of the animal seizure statute to the refusal statute in *Rafferty*, the comparison to be made to the case at bar is not so far a leap. The dangerous dog statute is a close cousin to the animal seizure statute and bears the same language. Virginia Code § 3.2-6540(B) identically states that the "procedure for appeal and trial

shall be the same as provided by law for misdemeanors" and prescribes that the standard of proof is "beyond a reasonable doubt." Therefore, applying the reasoning from both *Settle* and *Rafferty*, Va. Code § 3.2-6540(B) should be categorized as civil in nature.

A second reason to classify the statute as a civil proceeding involves the character of the penalties within the statute. In assigning a label of civil or criminal, courts look to whether or not the legislature created a "statutory scheme [that] was so punitive in purpose or effect as to transform what was clearly intended as a civil remedy into a criminal penalty." *Settle*, 55 Va. App. at 220 (quoting *Rex Trailer Co. v. United States*, 250 U.S. 148, 154, 76 S. Ct. 219, 100 L. Ed. 149 (1956)). To assist in this analysis, the Supreme Court articulated "useful guideposts" to help determine whether or not a civil sanction has been transformed into a criminal sanction. *See Hudson v. United States*, 522 U.S 93, 99-100, 118 S. Ct. 488, 139 L. Ed. 2d 450 (1997) (quoting *Kennedy v. Mendoza Martinez*, 372 U.S. 144, 168-69, 83 S. Ct. 554, 9 L. Ed. 2d 644 (1963)). These guideposts include:

> (1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as a punishment; (3) whether it comes into play only on a finding of scienter; (4) whether its operation will promote the traditional aims of punishment, retribution, or deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned.

*Settle*, 55 Va. App. at 220 (quoting *Hudson*, 522 U.S. at 99-100) (internal quotation marks omitted). These factors must "be considered in relation to the statute on its face" and are in no way exhaustive. *Hudson*, 522 U.S at 100 (quoting *Kennedy*, 372 U.S. at 169). Applying these guideposts to Va. Code § 3.2-6540, one can easily delineate the administrative nature and civil character of the articulated requirements. First, the statute does not contain a sanction that involves an affirmative disability or restraint. If a dog is classified as a dangerous dog pursuant to the proceedings in Va. Code § 3.2-6540, the statute imposes conditions on owning said dog. This is only a limitation on ownership designed for the safety of the community in which the dog lives, the safety of the owner, and the safety for the dog itself. These requirements are not intended to impose an "affirmative disability" or "restraint" that reaches the level of a criminal penalty.

Second, provisions allowing a court to order "actual damages" to an injured party and "reasonable expenses incurred" are much more civil in nature and do not approach the retribution or deterrence aims of punishment articulated by the guideposts nor are any other guidepost factors broached by what appears to be a civil remedy to actions by a dangerous dog, not even

the owner. Va. Code Ann. § 3.2-6540(B). Then, the remainder of the statute details the administrative process for owning an identified dangerous dog and the necessary fees and notices one must provide the Commonwealth. *See* Va. Code Ann. § 3.2-6540(E), (F). As mentioned earlier, only two words give pause to an absolute classification of this section being considered civil in nature, "penalties" (in the title of the statute) and "restitution." Va. Code Ann. § 3.2-6540(E), (F). However, taking the statute as a whole, the overwhelming character and nature of the section is that of a civil proceeding.

Third, the behavior to which the statute applies is not already classified as a crime. The statute simply outlines the proceedings for classification of a dangerous dog and the requirements imposed when owning one. There is no crime in owning a dangerous dog. There are simply additional requirements and responsibilities in place for ownership of such a dog, and these conditions on ownership are in place for public safety. Criminal charges may be brought against the owner or custodian only after the determination that the canine is a dangerous dog and it, thereafter, attacks or injures another animal or human being. Va. Code § 3.2-6540(J).

Using the guideposts, it is clear that Va. Code § 3.2-6540 should be classified as a civil proceeding; thus, the exclusionary rule should not apply. When one takes into account the primary purposes and goals behind the exclusionary rule, disallowing application of the exclusionary rule to Va. Code § 3.2-6540 makes logical sense. As the Commonwealth asserted, the exclusionary rule is undergirded by a primary purpose of deterring future unlawful police conduct. *Lopez-Mendoza*, 468 U.S. at 1041 (quoting *Janis*, 428 U.S. at 446). However, as articulated by the Court in *Lopez-Mendoza*, this benefit of deterrence is counterbalanced by a loss of "often probative evidence and all of the secondary costs that flow from the less accurate or more cumbersome adjudication that therefore occurs." *Id.* Other costs included "deflect[ing] the truth finding process and a risk of "engendering disrespect for law by promoting procedure above the fundamental search for truth and justice." *Ehlers*, 237 Va. at 603. In addition to these benefits and costs, it is important to note that, according to the Supreme Court, the "exclusionary rule has never been applied in a civil proceeding, state or federal." *Id.* (quoting *Lopez-Mendoza*, 468 U.S. at 1042, and *Janis*, 428 U.S. at 447).

With this legal backdrop, the benefit of deterrence should be balanced by the costs of rendering relevant and reliable evidence unavailable in a dangerous dog proceeding. This evidence would be used in a civil proceeding identifying the character of a potentially dangerous dog, resulting in an owner's being required to adhere to certain statutorily prescribed conditions, and not for purposes of imposing criminal penalties on the owner. The risk for allowing unlawful police conduct seems low when the evidence potentially at issue is merely being presented in an administrative process

about the classification of a canine. More importantly, because higher courts have restricted use of the exclusionary rule to criminal matters, the case at bar should not be subject to the rule's effects.

Lastly, both parties referenced *One 1958 Plymouth Sedan v. Pennsylvania*, which concerned a civil forfeiture proceeding of a car and the application of the exclusionary rule. 380 U.S. 693, 85 S. Ct. 1246, 14 L. Ed. 2d 170 (1965). That holding is not applicable here, because, as the Commonwealth asserted, a dangerous dog proceeding is not initiated to penalize the dog or owner for an offense against the law. This characterization of the dangerous dog proceeding is in contrast to the object of a forfeiture proceeding, which is to penalize a party for the commission of an offense against the law. In the case at bar, the Defendant was not penalized for ownership of the dog at issue. Furthermore, the Defendant was not permanently deprived of ownership of the dog, and the temporary taking of the animal was authorized by the statute. *See* Va. Code Ann. § 3.2-6540(B).

Therefore, because of the plain language of Va. Code § 3.2-6540, the nature of the requirements there within, and the underlying purpose of the exclusionary rule, this Court holds that the exclusionary rule does not apply to dangerous dog proceedings held pursuant to Va. Code § 3.2-6540, as they are civil proceedings.

## B. *Out of Court Identification of the Canine*

The second question the Court must address is whether an out-of-court identification of a dog should be suppressed. The Court holds that such an identification may not be suppressed. The Defendant has provided no authority that would have the identification procedure of a dog in a dangerous dog proceeding, who has not been criminally charged, be suppressed. Thus, there is no justification for extending the constitutional protection afforded to humans to the canine at issue in this case.

Even if such protections were afforded, the alleged identification at issue does not rise above the standards outlined by the Supreme Court of the United States for suppressing an out-of-court identification. In determining the admissibility of an out of court identification, the Supreme Court has outlined a two factor test: whether the identification process was unduly suggestive; and whether the out-of-court identification was so reliable that no substantial likelihood of misidentification existed. *Neil v. Biggers*, 409 U.S. 188, 197-200, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972). A totality of the circumstances test is used to determine the reliability of the identification, which the Defendant actually cited in his brief. *Sanchez v. Commonwealth*, 41 Va. App. 340, 354, 585 S.E.2d 337 (2003) (quoting *Biggers*, 409 U.S. at 199-200). The factors include the opportunity to observe the crime, degree of attention, accuracy of prior description of the criminal, the level of certainty, and the length of time between the crime and the confrontation. *Id.*

In this matter, the Defendant's claim that the use of a single photo of the dog being unduly suggestive is undercut by the evidence present. Setting aside the Commonwealth's argument that the dog should be treated like a piece of property, clothing, weapon, etc., the witness' statements, the victim's identification of the residence of the Defendant, from where the dogs escaped on the day of the incident, as well as the Defendant's father's own statements to the officers confirm the reliability of the "unduly suggestive" photo. As noted by the Commonwealth, if there is an issue about the identification of the dog in a dangerous dog proceeding, that is a matter best left for trial. Therefore, the out-of-court identification should be considered admissible.

## IV. Conclusion

In answering the first preliminary question, the Court weighs its decision heavily upon the finding that a dangerous dog proceeding is civil, and not criminal, in nature. Therefore, the exclusionary rule is not applicable. In answering the second preliminary question, the Court is reluctant to extend the constitutional due process protections afforded to a criminal defendant to a canine. Thus, the Court considers the out-of-court identification of the dog admissible. For the aforementioned reasons, Defendant's Motion To Suppress is denied without reaching the merits of the claim.